[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10915

_____

D.C. Docket No. 3:18-cr-00090-MMH-JBT-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DEANGELO LENARD JOHNSON,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 2, 2020)

Before MARTIN, ROSENBAUM, and TALLMAN,[*] Circuit Judges.

ROSENBAUM, Circuit Judge:

_____

[*] Honorable Richard C. Tallman, United States Circuit Judge for the Ninth Circuit, sitting by designation.

In 1996, Congress prohibited anyone convicted of a misdemeanor that involved domestic violence from possessing a firearm. *See* 18 U.S.C. § 922(g)(9). Senator Frank Lautenberg, who sponsored the legislation, noted that at that time, each year, somewhere between 1,500 and several thousand women were killed in domestic-violence incidents involving guns, and guns were present in 150,000 cases involving domestic violence. 142 Cong. Rec. 22985 (1996) (statement of Sen. Lautenberg).

Yet, Senator Lautenberg observed, many of the perpetrators of "serious spousal or child abuse ultimately are not charged with or convicted of felonies. At the end of the day, due to outdated laws or thinking, perhaps after a plea bargain, they are, at most, convicted of a misdemeanor." *Id.* at 22985. Seeking to "close this dangerous loophole," *United States v. Hayes*, 555 U.S. 415, 426 (2009) (quoting 142 Cong. Rec. 22986 (1996) (statement of Sen. Lautenberg)), Congress banned those who have been convicted of a "misdemeanor crime of domestic violence"—one where the victim was essentially a member or former member of the perpetrator's family, and the crime necessarily involved physical force—from possessing a firearm. *See* 18 U.S.C. §§ 921(a)(33)(A), 922(g)(9).

Recently, in *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019), the

2

Supreme Court clarified that a domestic-violence misdemeanant does not violate this prohibition on firearm possession if he does not know he is a domestic-violence misdemeanant at the time he possesses a gun. This case raises the question of what it means for a person to know he is a domestic-violence misdemeanant. As we explain below, we conclude that a person knows he is a domestic-violence misdemeanant, for *Rehaif* purposes, if he knows all the following: (1) that he was convicted of a misdemeanor crime, (2) that to be convicted of that crime, he must have engaged in at least "the slightest offensive touching," *United States v. Castleman*, 572 U.S. 157, 163 (2014) (internal citations omitted), and (3) that the victim of his misdemeanor crime was, as relevant here, his wife.

The record establishes that Defendant-Appellant Deangelo Johnson knew all these things at the time he was found in possession of a gun. So we reject Johnson's challenge to his conviction for being a domestic-violence misdemeanant while possessing a firearm. We similarly find no merit to his equal-protection and Commerce Clause arguments. For these reasons, we affirm Johnson's conviction.

## I.

In 2010, law enforcement responded to a call and found that Deangelo Johnson had "punched, strangled, and threatened to pistol whip" his wife. The responding officer observed numerous bruises and scratches all over Johnson's wife.

Based on Johnson's conduct, the State of Florida charged him with the felony crime of domestic violence by strangulation and assault. Represented by counsel, Johnson engaged in plea negotiations with the state. Ultimately, Johnson pled guilty to and was convicted of misdemeanor battery against his wife, in violation of Fla. Stat. § 784.03(1). He eventually was sentenced to six months in jail for this conviction.[1]

Eight years later, in 2018, police officers found a gun on the floor of Johnson's car while he was being arrested for an outstanding warrant. A federal grand jury indicted Johnson for having been "previously convicted of a misdemeanor crime of domestic violence, that is, Domestic Battery," and knowingly possessing a firearm, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2). The indictment did not allege that Johnson knew of his status as a domestic-violence misdemeanant when he possessed the firearm.

Johnson moved to dismiss his federal indictment for failure to state an offense. He argued that his Florida offense did not qualify as a misdemeanor crime of domestic violence for purposes of 18 U.S.C. § 922(g)(9) because he had never lost his civil rights, and 18 U.S.C. § 921(a)(33)(B)(ii) renders § 922(g)(9) inapplicable to any person who has been convicted of a misdemeanor crime of domestic violence

---

[1] Initially, Johnson was sentenced to two days in jail and a year of probation. But after two violations of probation, the court revoked his probation and sentenced him to six months in jail.

but, as relevant here, has had his civil rights restored. Johnson did not challenge the indictment on the basis that he did not know that he had been convicted of the misdemeanor in 2010 for battery against his wife.

The district court denied Johnson's motion to dismiss, relying on *Logan v. United States*, 552 U.S. 23 (2007). In *Logan*, the Supreme Court held that a near-identical rights-restoration exception in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 921(a)(20), applied to only those individuals who had had their civil rights restored but not to those who had never lost their civil rights in the first place. 552 U.S. at 37.

Johnson then waived his right to a jury trial and agreed to a stipulated-facts bench trial. Under those stipulated facts, Johnson confirmed that he had previously been convicted of a misdemeanor crime of domestic violence when he pled guilty in 2010 to committing Florida misdemeanor domestic battery against his wife. He also confirmed that officers later found a pistol on the floor of his car when they arrested him for an outstanding warrant. The district court made oral findings of fact and concluded that based on the stipulated facts, Johnson was guilty of violating 18 U.S.C. § 922(g)(9).

Johnson's presentence investigation report ("PSR") recommended a total offense level of 12, with a criminal-history category of II, corresponding to an

5

advisory Guidelines sentencing range of 12 to 18 months' imprisonment. Johnson did not object to the facts or Guidelines calculations in his PSR.

At Johnson's sentencing hearing, Johnson argued for a variance to a sentence of time served plus one day because he did not "know that he was not supposed to possess a firearm." Johnson explained that he was unaware of the firearm prohibition because he was not a convicted felon—and therefore not advised he could not possess a firearm—and as a misdemeanant, he was not prohibited from possessing a firearm by Florida law. The district court acknowledged that "this is an unusual offense in that it isn't often that individuals end up before the Court charged with something that they can genuinely say they didn't know was unlawful, and that under the circumstances of this case, it is significant." The court imposed the sentence Johnson requested, reasoning that "under the somewhat unusual facts of this case that is an appropriate sentence."

Johnson timely appealed his conviction. We stayed briefing until the Supreme Court issued its decision in *Rehaif* holding that, under 18 U.S.C. § 922(g), knowledge of status is an element of unlawful possession of a firearm. Johnson now relies on *Rehaif* in seeking to vacate his conviction. He asserts that both the indictment and the stipulated facts at the bench trial were insufficient under *Rehaif* because they failed to allege and prove that Johnson knew he was a domestic-violence misdemeanant. Separately, he argues that Section 922(g) is

6

unconstitutional because (1) it violates his equal-protection rights by treating him less favorably than similarly situated people convicted of misdemeanor crimes of domestic violence who lost their civil rights and had them restored, and (2) it violates the Commerce Clause.

We begin with Johnson's *Rehaif* arguments. As we have noted, *Rehaif* clarified that to convict a defendant of illegal possession of a firearm under Section 922(g), the government must prove that "the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." 139 S. Ct. at 2194. Johnson's relevant status under Section 922(g) is that of a domestic-violence misdemeanant under 18 U.S.C. § 922(g)(9).

For purposes of Section 922(g)(9), 18 U.S.C. § 921(a)(33)(A) defines the term "misdemeanor crime of domestic violence" as an offense that is a misdemeanor under federal, state, or tribal law and "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim . . . ." Under this definition, it is enough that the victim "was in fact the offender's spouse (or other relation specified in [the definition])"—regardless of whether the predicate misdemeanor requires as an element a domestic relationship between the perpetrator and the victim. *Hayes*, 555 U.S. at 418.

As we have noted, Johnson makes two *Rehaif*-based challenges. First, he contends that the indictment failed to state an offense because it did not allege that Johnson knew of his status; and second, Johnson argues that the stipulated facts at his bench trial were insufficient to prove that he knew his status as a domestic-violence misdemeanant.

**A. We review Johnson's *Rehaif* claims for plain error**

Before we get to the merits of Johnson's arguments, we must identify the applicable standard of review. Generally, we engage in de novo review of challenges to an indictment or to the sufficiency of the evidence. *United States v. Sperrazza*, 804 F.3d 1113, 1119 (11th Cir. 2015); *United States v. Taylor*, 480 F.3d 1025, 1026 (11th Cir. 2007). But when a defendant fails to raise an argument in district court, we review for plain error. *United States v. Reed*, 941 F.3d 1018, 1020 (11th Cir. 2019); *Sperrazza*, 804 F.3d at 1119.

Here, the government asserts that we should not review Johnson's sufficiency-of-the-evidence argument at all because he invited error by stipulating that the facts were sufficient to convict him. We disagree.

Johnson explained in district court that he proceeded to a stipulated bench trial solely because he did not know that he was prohibited under Section 922(g) from possessing a firearm, since misdemeanants in Florida are not deprived of their civil rights. Because the elements of Section 922(g) were understood (and were applied

8

under binding precedent, *see United States v. Jackson*, 120 F.3d 1226, 1229 (11th Cir. 1997), *abrogated by Rehaif*, 139 S. Ct. 2191), at the time Johnson stipulated, the facts to which he agreed were sufficient to prove the elements of Section 922(g). Of course, since Johnson's bench trial and sentencing, *Rehaif* has clarified the elements of Section 922(g). Now, there can be no doubt that under *Rehaif*, the elements the district court accounted for were incomplete. Johnson's acknowledgement that the evidence he stipulated to was sufficient to satisfy the elements of the crime as laid out by then-binding precedent does not preclude him from asserting that the stipulation is not sufficient in light of the Supreme Court's subsequent issuance of *Rehaif*.[2]

But while Johnson did not invite error in the district court, neither did he raise the claims that he now makes on appeal. Johnson argues that he did raise them when he moved to dismiss his indictment and when defense counsel discussed his lack of knowledge at sentencing. We are not persuaded.

Johnson contended in his motion to dismiss the indictment that he had not committed a misdemeanor crime of domestic violence as 18 U.S.C. § 921(a)(33)(a) defines the term because he fell under an exception that Section 921(a)(33)(B)(ii) recognizes. As we have mentioned, that section renders non-qualifying an otherwise-qualifying predicate offense under Section 922(g)(9) if, as relevant to

---

[2] *Rehaif* applies to Johnson's case on direct appeal. *See Reed*, 941 F.3d at 1021.

Johnson's argument, the defendant's civil rights have been restored since he was convicted. Johnson did not argue that his civil rights had been restored. Rather, because Johnson never lost his civil rights in connection with his conviction for a Florida domestic-violence misdemeanor, he contended that he was covered by the Section 921(a)(33)(B)(ii) exception.

That argument is different from Johnson's *Rehaif*-based contention on appeal that the indictment is insufficient because it fails to charge that Johnson knew he was a domestic-violence misdemeanant. In fact, as the district court ruled and as we explain later, *see infra* at II.C.2, a different Supreme Court case from *Rehaif*— *Logan*, 552 U.S. 23—forecloses Johnson's Section 921(a)(33)(B)(ii)-based argument. To be clear, at no point in the district-court proceedings did Johnson ever argue or even suggest that he was unaware that he had previously been convicted in Florida of a misdemeanor for engaging in physical violence against his wife.

Similarly, at Johnson's sentencing hearing, Johnson contended only that he did not know that he was not allowed to possess a gun because no one ever told him and because Florida never abrogated his civil rights. Johnson did not make the separate argument that he did not know that he had been convicted of a misdemeanor for using physical force against his wife.

Because Johnson did not raise his *Rehaif* arguments in the district court, we review for plain error. *Reed*, 941 F.3d at 1020. To establish plain error, Johnson

10

must show that (1) an error occurred, (2) the error was plain or obvious, and (3) it affected his substantial rights. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005). If Johnson can demonstrate the three plain-error components, we may exercise our discretion to remedy the error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

**B. *Rehaif* error occurred in the district court, and that error was plain**

*1. Johnson's indictment contained error, and that error is plain*

We begin by reviewing the district court's order on Johnson's motion to dismiss his indictment for plain error. An error is plain if it is "obvious" and "clear under current law." *United States v. Lange*, 862 F.3d 1290, 1296 (11th Cir. 2017) (internal citation omitted).

Indictments must "contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend, and, second, enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117 (1974). Here, we focus on the first half of this equation, which requires an indictment to include the elements of the crime charged. *Id.*

Under current law, as clarified by *Rehaif*, to establish a violation of Section 922(g)(9), the government must prove all of the following elements: (1) the defendant knew he possessed (2) a "firearm" (as defined by the statute) that (3) had

11

traveled in interstate commerce, and (4) he knew he had previously been convicted of a misdemeanor crime of domestic violence. *See Rehaif*, 139 S. Ct. at 2195-96. Johnson's indictment fails to allege that he knew he was a domestic-violence misdemeanant when he possessed the firearm in this case. So it is insufficient and plainly erroneous under current law.

The government argues that this omission does not constitute plain error because Johnson's indictment tracked the language of Sections 922(g)(9) and 924(a)(2), including the knowledge element. And it is true that the indictment did charge, in relevant part, that Johnson, "having been previously been convicted of a misdemeanor crime of domestic violence, that is, Domestic Battery, in the County Court, Duval County, Florida, on or about June 14, 2010, did *knowingly* possess, in and affecting interstate commerce, a firearm that is, a Cobra, .380 caliber pistol." (emphasis added). But inconsistent with *Rehaif*, the indictment charged knowledge with respect to only Johnson's possession of the firearm, not as to Johnson's status as a domestic-violence misdemeanant.

While it is generally enough for an indictment to track statutory language, as Johnson's did, simply tracking statutory language does not suffice when the resulting indictment fails to "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offen[s]e intended to be punished." *Hamling*, 418 U.S. at 117 (citation and internal quotation marks

12

omitted).  That was certainly the case here, since Section 922(g)'s phrasing did not materially change after we decided *Jackson*, where we held that Section 922(g) did not require the defendant to know his relevant status to be found guilty.  120 F.3d at 1229.  Against that background, no indictment that merely tracked Section 922(g)'s statutory language could unambiguously set forth all elements of the crime.  And for that reason, the indictment was plainly erroneous.  *See Reed*, 941 F.3d at 1021 (finding plain error when the "indictment failed to allege that he knew [his status]"); *United States v. Moore*, 954 F.3d 1322, 1337 (11th Cir. 2020) (same).[3]

The government also tries to shoehorn this case into fitting within our decisions in *United States v. Gray*, 260 F.3d 1267 (11th Cir. 2001), and *United States v. Woodruff*, 296 F.3d 1041 (11th Cir. 2002).  We determined that the indictments at stake there were not defective even though they did not allege a mens rea element.

But *Gray* and *Woodruff* are materially different.  Each dealt with an indictment for Hobbs Act robbery that alleged that the defendant "unlawfully"

---

[3] In one of their letters of supplemental authority, the government asserts that *Moore* supports its position because we stated that "[t]he absence of an element of an offense in an indictment is not tantamount to failing to charge a criminal offense against the United States." 954 F.3d at 1333.  We are disappointed by this argument, which relies on an out-of-context quotation to mischaracterize our opinion in *Moore*.  The language that the government invokes from *Moore* comes from our analysis explaining that a *Rehaif* defect in an indictment does not deprive the district court of subject-matter jurisdiction, *see id.* at 1332-37; it has nothing to do with the point for which the government relies on it.  In fact, in that same case, we held that the *Rehaif* defect in the indictment there, which similarly tracked the applicable statutory language, *see id.* at 1332-33, was plain error because it failed to specifically charge that the defendant knew of his status, *see id*. at 1337.  There, though, the government conceded plain error.

13

"t[ook]" "property" "by means of . . . force, violence, and fear of injury." *Gray*, 260 F.3d at 1283; *Woodruff*, 296 F.3d at 1046. We upheld the sufficiency of those indictments because "the requisite state of mind may be inferred from other allegations in the indictment." *Gray*, 260 F.3d at 1283; *Woodruff*, 296 F.3d at 1046. Indeed, a person cannot take property by means of force, violence, and fear of injury without knowing he is doing that.

In contrast, a person could hypothetically be convicted of a state-law battery offense without realizing that it qualified as a misdemeanor crime of domestic violence. So unlike with the Hobbs Act robbery offenses at issue in *Gray* and *Woodruff*, the knowledge requirement pertaining to Johnson's status could not be inferred from the allegations in the indictment. And the rule in *Gray* and *Woodruff* cannot save the indictment here.

>    *2. The lack of evidence in the stipulated facts proving that Johnson knew he was a domestic-violence misdemeanant constituted error, and that error was plain*

As for Johnson's sufficiency-of-the-evidence claim, as the government appropriately concedes, the error there was plain to the extent that the stipulated facts did not demonstrate that Johnson had knowledge of his status as a domestic-violence misdemeanant. As we have explained, that was clearly contrary to the law as we understand it after *Rehaif*. *See Rehaif*, 139 S. Ct. at 2200; *Reed*, 941 F.3d at 1021.

**C. The plain errors did not affect Johnson's substantial rights**

14

Having concluded that plain error infected both the indictment and the sufficiency of the evidence based on the stipulated facts, we consider whether either of these errors affected Johnson's substantial rights. To show that an error affected his substantial rights, Johnson bears the burden of demonstrating a reasonable probability that, without the error, the outcome of the proceeding would have been different. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016); *United States v. Margarita Garcia*, 906 F.3d 1255, 1267 (11th Cir. 2018). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Margarita Garcia*, 906 F.3d at 1267 (internal quotation marks omitted). To determine whether Johnson's substantial rights have been affected, we review the entire record. *Reed*, 941 F.3d at 1021.

Whether the plain errors here had any impact on Johnson's substantial rights hinges on the evidence of record showing whether Johnson knew his status—domestic-violence misdemeanant—when he possessed the gun. If this evidence is lacking, then Johnson can meet his burden to demonstrate a reasonable probability that the outcome of his case would not have been the same in the absence of the errors. But if not, then he cannot establish a reasonable probability that the outcome of his case would have differed, and his *Rehaif* challenges fail.

1. Rehaif's *Knowledge-of-Status Requirement*

15

We begin by identifying what *Rehaif*'s knowledge-of-status requirement demands. Rehaif was convicted of possessing a firearm as a non-citizen illegally in the United States, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2). *Rehaif*, 139 S. Ct. at 2194. He argued that he did not know that his presence in the United States was unlawful. *Id*. at 2195. The Supreme Court held that the language of Sections 922(g) and 924(a)(2) required proof that when Rehaif possessed the gun, he knew that he was a non-citizen who was "illegally or unlawfully in the United States." *Id*. at 2198. To explain what it meant by this, the Court pointed to *Liparota v. United States*, 471 U.S. 419 (1985), as illustrative of the type of knowledge required. *Rehaif*, 139 S. Ct. at 2198.

In *Liparota*, the defendant challenged his conviction for "knowingly us[ing] transfer[ring], acquir[ing], alter[ing], or possess[ing] [Food Stamps] in any manner not authorized by [the statute] or the regulations." *Liparota*, 471 U.S. at 420. The Supreme Court determined that the government had to show not only that the defendant had used, transferred, acquired, altered, or possessed Food Stamps, but also that the defendant knew that he was acting in a way that the applicable statute or regulations did not authorize. *Id.* at 423-25.

Significantly, though, the Court cautioned, the government did not need to demonstrate that the defendant "had knowledge of specific regulations governing food stamp acquisition or possession" that made his transfer or possession of food

16

stamps unlawful. *Id.* at 434. In other words, *Liparota* did not "create[] a defense of 'mistake of law.'" *Id.* at 425 n.9. To explain this concept further, the Court pointed to the offense of knowing receipt of stolen goods. *Id.* It noted that not knowing that receipt of stolen goods is a crime is no defense to that offense, but not knowing the goods were stolen is. *Id.*

Given this understanding, it is not surprising that in *Elonis v. United States*, 575 U.S. 723, ___, 135 S. Ct. 2001, 2010 (2015), the Supreme Court characterized *Liparota* as having construed the statute there "to require knowledge of the facts that made the use of the food stamps unauthorized."[4] And the Court summarized its cases as having "explained that a defendant generally must 'know the facts that make his conduct fit the definition of the offense,' even if he does not know that those facts give rise to a crime." *Id.* at 2009 (quoting *Staples v. United States*, 511 U.S. 600, 608 n.3 (1994)).

So for example, in *Staples*, the Court considered what the government had to prove to establish a violation of the law that made it illegal for anyone to possess a machinegun that was not properly registered with the federal government. 511 U.S.

---

[4] *Rehaif* described the same thing from *Liparota* a little differently. It said that the Court "required the Government to prove that the defendant knew that his use of food stamps was unlawful—even though that was a question of law." 139 S. Ct. at 2198. We think *Elonis*'s characterization better helps to describe the type of knowledge that is required and to avoid the confusion that *Rehaif* suggests can occur in trying to differentiate between concepts of knowledge of the law and knowledge of the effect of a so-called collateral matter (here, status) under the law. *See id.*

at 602. The Court held that the government was required to demonstrate, in relevant part, that the defendant knew that the weapon he possessed had the characteristics that caused it to fall within the statutory definition of a machinegun. *Id.* In other words, the Court explained, the defendant "must know the facts that make his conduct illegal . . . ." *Id.* at 619. But the defendant did not need to know the statutory definition of a machinegun to be convicted. *See id.*

To determine what facts Johnson needed to know in light of *Rehaif*, we now turn to the statutory definition of "misdemeanor crime of domestic violence" under Section 921(a)(33). This section includes two subsections. As we will explain, subsection (a)(33)(A) contains the elements of this offense, while subsection (a)(33)(B) contains affirmative defenses.

    a. Section 921(a)(33)(A) contains the elements that establish whether a person knows he is a domestic-violence misdemeanant

Applying the principles from the teachings of *Rehaif*, *Liparota*, *Elonis*, and *Staples* to Section 922(g)(9)'s status requirement, we conclude that, at the time he possessed the firearm, the defendant must have known that he was convicted of a misdemeanor, and he must have known the facts that made that crime qualify as a misdemeanor crime of domestic violence. But Section 922(g)(9) introduces a slight twist: one of the facts that makes a crime qualify as a misdemeanor crime of domestic violence is that the crime must categorically require the use or threatened use of physical force. *See* 18 U.S.C. § 921(a)(33)(A)(ii); *see also Castleman*, 572

18

U.S. at 168. That may create the misimpression that *Rehaif* requires technical knowledge of the law. It doesn't. The Court did not conclude that Congress expected a person to have performed a *Descamps*[5] analysis on his misdemeanor crime of conviction to determine whether any element of the statute under which he was convicted categorically required the use or threatened use of "physical force."

Rather, the knowledge-of-status requirement demands that the defendant have known only that, to be convicted of his misdemeanor crime, he must have engaged in or threatened to engage in conduct that constitutes "physical force" as the Supreme Court has defined it for purposes of a misdemeanor crime of domestic violence under Section 922(g)(9)—whether or not the defendant actually knew that the Supreme Court had defined the term and what that definition was. In *Castleman*, the Supreme Court established that conduct consisting of "even the slightest offensive touching" satisfies Section 921(A)(33)(a)(ii)'s definition of "physical force." 572 U.S. at 163 (internal citation omitted).

So as relevant here, to satisfy *Rehaif*'s knowledge-of-status requirement under Section 922(g)(9), the evidence must establish that Johnson knew all the following: (1) he had been convicted of a misdemeanor under state law, 18 U.S.C. § 921(a)(33)(A)(i); (2) to be convicted of that misdemeanor, he must have knowingly

---

[5] *Descamps v. United States*, 570 U.S. 254 (2013).

or recklessly[6] engaged in at least "the slightest offensive touching";[7] and (3) the victim was his current or former spouse at the time he committed the crime, 18 U.S.C § 921(a)(33)(A)(ii). When we review the record for these things, we keep in mind that there need not be "extraordinary evidence that would conclusively demonstrate [Johnson's] state of mind. Rather, as in any other criminal prosecution requiring *mens rea*, [state of mind may be proven] by reference to facts and circumstances surrounding the case . . . ." *Liparota*, 471 U.S. at 434; *see also Ratzlaf v. United States*, 510 U.S. 135, 149 n.19 (1994) ("A jury may, of course, find the requisite knowledge on defendant's part by drawing reasonable inferences from the evidence . . . .").

b. Section 921(a)(33)(B) does not set forth elements of what it means for a person to know he is a domestic-violence misdemeanant

Before we leave this discussion to evaluate the evidence of record and determine whether it sufficiently establishes that Johnson had the necessary knowledge, we pause to explain why, in demonstrating a domestic-violence misdemeanant's knowledge of his status, the government does not bear the burden

---

[6] *See Voisine v. United States*, 136 S. Ct. 2272, 2282 (2016).

[7] The Dissent asserts that *Rehaif* requires the government to "prove the defendant was aware that his prior conviction included the element of use or attempted use of force." Dissent at 50. We don't disagree with this principal. We just believe that to prove knowledge that the prior conviction included an element of use or attempted use of physical force, the government must show that the defendant knew that his prior offense necessarily required for conviction (i.e., an element) that he engaged in at least "the slightest offensive touching"—the definition the Supreme Court has identified for the meaning of "physical force" in Section 921(a)(33). *See Castleman*, 572 U.S. at 163.

of proving the misdemeanant's knowledge of the items specified in Section 921(a)(33)(B).

Up until now, we have discussed Section 921(a)(33)(A) primarily. But Section 921(a)(33) also contains a subparagraph (B). That paragraph provides,

> **(B)(i)** A person shall not be considered to have been convicted of such an offense for purposes of this chapter, unless—
>
> **(I)** the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case; and
>
> **(II)** in the case of a prosecution for an offense described in this paragraph for which a person was entitled to a jury trial in the jurisdiction in which the case was tried, either
>
> > **(aa)** the case was tried by a jury, or
> >
> > **(bb)** the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.
>
> **(ii)** A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

We now explain how Section 921(a)(33)(B) fits into the legislative scheme.

We see two possibilities: (1) Section 921(a)(33)(B) sets forth elements of the definition of "misdemeanor crime of domestic violence," or (2) it states what are effectively affirmative defenses. The difference between an element and an affirmative defense is important: while the government must prove knowledge,

21

"[w]here affirmative defenses are created through statutory exceptions, the ultimate burden of persuasion remains with the prosecution, but the defendant has the burden of going forward with sufficient evidence to raise the exception as an issue." *United States v. Larouche*, 723 F.2d 1541, 1543 (11th Cir. 1984). So while the evidence must be enough to establish all the elements of knowledge, it need not prove that affirmative defenses did not apply, unless the defendant first introduced evidence that one did.

Neither Johnson nor the government makes any specific argument that Section 921(a)(33)(B) sets forth elements for proving a person knows he is a domestic-violence misdemeanant.[8] And we agree with their apparent implicit conclusion that Section 921(a)(33)(B) represents what are effectively affirmative defenses, since as we explain below, both our test for assessing whether something constitutes an element and our precedent require that answer.

---

[8] The Dissent suggests that the parties do not raise this issue and indicates its preference that we not decide this issue. *See* Dissent at 42 n.1. We don't think that is a tenable option under the circumstances here. While no party specifically argues that the Section 921(a)(33)(B) provisions do or do not constitute elements of a "misdemeanor crime of domestic violence" under Section 921(a)(33), Johnson most assuredly does contend that the *Rehaif* errors here constituted plain errors that affected his substantial rights because, Johnson claims, the government did not establish that he knew he was a domestic-violence misdemeanant. To ascertain whether that is the case, we must first identify what the evidence of record was required to show to demonstrate whether Johnson knew he was a domestic-violence misdemeanant. That requires us to determine what parts of Section 921(a)(33) specify elements of the definition of "misdemeanor crime of domestic violence." Assuming without deciding that Section 921(a)(33)(B) sets forth affirmative defenses is not consonant with evaluating whether the plain errors here affected Johnson's substantial rights, since if the Section 921(a)(33)(B) components were elements, the government would be required to prove them, and we would need to study the record to see whether it contained sufficient evidence to establish each of these components.

22

To evaluate whether a statutory exception serves as an element of a crime, we consider three factors. *United States v. Kloess*, 251 F.3d 941, 944 (11th Cir. 2001). We start with the statutory language and structure to see whether they yield any clues about the exception's role. *Id.* Second, we review the statute's legislative history to learn whether Congress intended for the exception to serve as an element of the crime. *Id.* And third, we assess whether the government is in a good position to find evidence that could prove the exception's applicability.[9] *Id.*

Beginning with the statutory language and structure, we first observe that Section 921(a)(33) is divided into two parts: (A) and (B). Subparagraph (A) begins, "Except as provided in subparagraph (C),[10] the term 'misdemeanor crime of domestic violence' means an offense that— . . . ." Subparagraphs (B)(i) and (B)(ii) each start, "A person shall not be considered to have been convicted of such an offense for purposes of this chapter," "unless," in the case of subparagraph (B)(i), and "if," in the case of subparagraph (B)(ii), certain conditions exist. Perhaps these

---

[9] The Dissent takes issue with this third factor—whether the government is in a good position to find evidence that could prove the exception's applicability. *See* Dissent at 42 n.1. But our precedent has adopted this factor as part of the test for whether a provision constitutes an element or an affirmative defense, and we are bound by our prior-precedent rule to follow that precedent. *See United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc). Plus, as we have noted, the prosecution still has the ultimate burden of persuasion on affirmative defenses. *Larouche*, 723 F.2d at 1543.

[10] Section 921(a)(33) does not contain a subparagraph (C). But as we discuss above, subparagraph (B) does set forth statutory exceptions to when a person may be considered to have been convicted of a "misdemeanor crime of domestic violence." We therefore construe the reference to subparagraph (C) to be a typographical error intended to refer to subparagraph (B).

23

words could indicate congressional intent to make the subparagraph (B) factors elements of the definition of "misdemeanor crime of domestic violence." But based on the rest of our analysis, we don't think so.

According to its statutory language, the purpose of subparagraph (A) is to state what the term "misdemeanor crime of domestic violence" means. *See* 18 U.S.C. § 921(a)(33)(A) ("the term 'misdemeanor crime of domestic violence' means an offense that . . ."). Congress did not place the provisions of subparagraphs (A) and (B) in a single section—though it could have. We think that separating the subparagraph (A) provisions from those in subparagraph (B) suggests that Congress envisioned different roles for the two subparagraphs. Based on the structure Congress chose, we believe Congress viewed subparagraph (A) as setting forth the elements of a "misdemeanor crime of domestic violence" and subparagraph (B) as articulating what are effectively affirmative defenses.

As for the legislative history, we found statements from a single Senator stating his view that subparagraph (B) "has no real substantive effect" and "really does not change anything," 142 Cong. Rec. 11842 (Statement of Sen. Lautenberg). And we found a Congressional Research Service report published a few months after the bill passed, characterizing Section 921(a)(33)(B)(i) as "statutory defenses to the validity of the predicate conviction." Cong. Rsch. Serv., *Gun Ban for Persons Convicted of Misdemeanor Crime of Domestic Violence: Ex Post Facto Clause and*

24

*Other Constitutional Issues* (Dec. 30, 1996). Though both suggest that the subparagraph (B) components are intended to be defenses and not elements, we haven't found anything that purports to be indicative of the sense of the Congress. So we do not consider legislative history in our analysis.

When we look to whether the government is in a good position to prove the exculpatory exceptions set forth in subparagraph (B), we conclude that relative to the defendant, it is not. In explaining why, we start with subparagraph (B)(ii), which excepts from the definition of "misdemeanor crime of domestic violence" any otherwise qualifying conviction that has been "expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored." 18 U.S.C. § 921(a)(33)(B)(ii).

We have previously analyzed a similar exception to determine whether it was an element or an affirmative defense. In *United States v. Jackson*, 57 F.3d 1012 (11th Cir. 1995), we looked at 18 U.S.C. § 921(a)(20)'s definition of "crime punishable by imprisonment for a term exceeding one year." At that time, the statute said,

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. *Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless* such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

25

*Jackson*, 57 F.3d at 1015 (quoting 18 U.S.C. § 921(a)(20) (West Supp. 1994) (emphasis added by *Jackson* Court)).

We concluded that the italicized part of the statutory defenses was not an element. *See id.* at 1016-17. In reaching this conclusion, we quoted the Tenth Circuit for the proposition that the defendant is in a better position than the government to show that his conviction has been expunged, his civil rights have been restored, or he has been pardoned:

> As a practical matter, requiring the government to negate the possibility, in every § 922(g)(1) case, that each defendant's prior convictions had been expunged or set aside, that a pardon had been granted, or that civil rights had been restored, would impose an onerous burden. A defendant ordinarily will be much better able to raise the issue of whether his prior convictions have been expunged or set aside, whether a pardon has been granted, or whether civil rights have been restored.

*Id.* at 1016 (quoting *United States v. Flower*, 29 F.3d 530, 535 (10th Cir. 1994)). We, of course, are bound by *Jackson*. *See United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc). So we conclude that the defendant is better situated than the government to demonstrate any of the defenses listed under subparagraph (B)(ii).

That brings us back to Section 921(a)(33)(B)(i). As a reminder, that provision excepts from the definition of "misdemeanor crime of domestic violence" convictions where the defendant was not represented by (or did not knowingly and intelligently waive the right to be represented by) counsel and those where the

26

defendant was entitled to be tried by a jury but was not and did not knowingly and intelligently waive the right to try the case to a jury.

Although we focused on a restoration-of-civil-rights exception in *Jackson*, we also relied on another of our precedents, *United States v. Ruo*, 943 F.2d 1274, 1276 (11th Cir. 1991), which helps explain why it would also be harder for the government to shoulder the burden of demonstrating the exceptions in subparagraph (B)(i) here. We cited *Ruo* for the proposition that as a practical matter, it makes sense for the defendant to bear the weight of demonstrating defects in prior convictions. *Id.* We explained,

> [U]nder § 924(e), the burden is properly placed on the defendant raising the challenge to show the constitutional invalidity of the prior convictions. Any given conviction might suffer any of a myriad of constitutional defects. It would approach the absurd to undertake to prove guilt all over again in every predicate conviction . . . . Instead, the government's burden is properly met when it introduces evidence that there are at least three prior violent felony convictions. The defendant must then point out any defects in a particular prior conviction.

*Jackson*, 57 F.3d at 1016 (quoting *Ruo*, 943 F.2d at 1276). Though Section 924(e) did not list exceptions built into it, the point is that we have previously concluded that the defendant is in the better position to know of the facts subparagraph (B)(i) says remove a conviction from the definition of "misdemeanor crime of domestic violence."

Plus, returning for a moment to our first consideration—the language and structure of the statute—that subsections (i) and (ii) both appear under subparagraph (B) suggests that Congress viewed the two provisions to have a similar function in the overall structure of Section 922(a)(33). So since subsection (B)(ii) is an affirmative defense, it is more likely that subsection (B)(i) is as well.

In short, we conclude that the government does not have an affirmative obligation to prove or disprove the defendant's knowledge of the components listed in subparagraph (B) to demonstrate that the defendant knew he was a domestic-violence misdemeanant, unless the defendant first brings forward evidence suggesting that his prior conviction is excepted from the definition of "misdemeanor crime of domestic violence."

2. *The record establishes that, for purposes of* Rehaif's *knowledge requirement, Johnson knew he was a domestic-violence misdemeanant*

Now that we've established what knowledge a domestic-violence misdemeanant must possess under *Rehaif*, we consider whether the record here demonstrates that Johnson had that knowledge at the time he was found with the firearm in this case. To make this determination, we look here to Johnson's stipulation at trial and the undisputed facts in his PSR, which the district court adopted as factual findings. As we have explained, when a defendant does not object to a district court's factual findings, he is bound by them and may not argue that they contained error. *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006).

28

Review of these documents reveals that the record includes sufficient evidence to establish that Johnson had the requisite knowledge of his status as a domestic-violence misdemeanant when he was found with the gun in his possession.

First, Johnson knew at the time he possessed the gun that he had been convicted of the misdemeanor crime of battery under Florida Statute § 784.03(1). We know this because he stipulated at the bench trial that he had pled guilty to the charge of "domestic battery" under the laws of the State of Florida,[11] and Johnson's Florida conviction identified the statute of conviction as Florida Statute § 784.03(1)(a), Florida's battery statute. Johnson's PSR states that he was originally charged with domestic battery by strangulation and assault, which Florida Statute § 784.041 renders a felony. That he eventually pled to the misdemeanor instead also supports the notion that he knew he was convicted of a misdemeanor under Florida law. Plus, Johnson ultimately spent six months in jail as a result of that conviction—

---

[11] The Dissent seems to suggest that Johnson could not have known these things at the time he possessed the firearm because the evidence that proves he did came from his stipulation at the bench trial, which occurred after he possessed the gun. *See* Dissent at 51 (e.g., "[N]either [the stipulation nor the PSR] show that Mr. Johnson 'knew . . . when he possessed' the firearm that he was a domestic-violence misdemeanant.") (quoting *Rehaif*, 139 S. Ct. at 2194 (emphasis added)). We respectfully disagree. In this case, the contents of the stipulation and the PSR identify what Johnson knew at the time that he pled guilty to the underlying misdemeanor crime of domestic violence. For example, he knew at the time he pled guilty to the misdemeanor that he was pleading guilty to a misdemeanor because, the stipulation shows, he pled down from a felony, and he eventually spent six months in jail for his conviction. To spend time in jail for this offense, it must have been a misdemeanor or a felony. And he stated he knew it was not a felony. Indeed, that was his defense: that he was not told that he could not possess a firearm because he had not been convicted of a felony, and misdemeanants in Florida do not lose their civil rights. So while these facts are documented in the stipulation and PSR, which were created after Johnson possessed the gun, they are sufficient to infer he knew these facts before he possessed the gun.

29

another indication that he must have been aware of it.  Finally, during this case, Johnson admitted he knew he was a misdemeanant when he explained that he did not know he was prohibited from possessing a firearm because he was only a misdemeanant, and misdemeanants in Florida do not lose their civil rights.

Second, Johnson knew that the misdemeanor to which he pled guilty—battery—required that he had, at a minimum, recklessly engaged in at least "the slightest offensive touching."  *Castleman*, 572 U.S. at 163 (internal citations omitted).  The offense of battery under Florida law requires that the defendant have "[a]ctually and intentionally touche[d] or str[uck] another person against the will of the other," Fla. Stat. §  784.03(1)(a)(1.).  A person cannot intentionally touch someone against her will without, at a minimum, recklessly committing at least "the slightest offensive touching."

And Johnson stipulated at his bench trial here that with the assistance of counsel, he "knowingly and intelligently waived his right to a jury trial and pled guilty" to the offense of battery.  The Supreme Court has explained that a knowing and intelligent plea requires that the defendant have been informed of the crime's elements. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).  Since Johnson stipulated that he knowingly and intelligently pled guilty to battery, the record establishes that, at the time he pled guilty to battery, he knew he was pleading guilty to that offense, and he knew that one of the elements of that offense required him to have "[a]ctually

30

and intentionally touche[d] or str[uck] another person against the will of the other."

Fla. Stat. § 784.03(1)(a)(1.).  That means that the record shows that Johnson knew

an element of his offense of conviction required that he had necessarily engaged in

at least "the slightest offensive touching."

And third, as we have just noted and as Johnson stipulated to at his bench trial

here, the victim of Johnson's prior Florida misdemeanor battery was his wife.

Obviously, Johnson knew she was his wife.

So the record establishes that Johnson knew at the time he was found with the

firearm in this case that he had previously been convicted of a misdemeanor crime

of domestic violence.  And for that reason, no reasonable probability exists that the

outcome would be different on remand.[12]  We therefore conclude that the plain errors

---

[12] The Dissent argues that our conclusion creates a split with the Seventh Circuit's decision in *United States v. Triggs*, 963 F.3d 710 (7th Cir. 2020), because "'complexity of the statutory definition' of a misdemeanor crime of domestic violence gives defendants 'at least a plausible argument' that they were unaware they were convicted of such an offense."  Dissent at 57 n.7 (quoting *Triggs*, 963 F.3d at 716).  We think not.  True, the Seventh Circuit noted "the complexity of the statutory definition," but that alone was not the reason why that court remanded the case.  Rather, unlike here, in *Triggs*, the defendant pled guilty to his Section 922(g)(9) offense, and the proceedings that led to the defendant's underlying domestic-violence misdemeanor conviction were "messy."  *Id.* at 716.  So the Seventh Circuit was able to conclude that Triggs had a "colorable argument that he was unaware that he was convicted of a misdemeanor crime of domestic violence," without ever analyzing what it means for a domestic-violence misdemeanant to know he is a domestic-violence misdemeanant.  *Id.*  The record here does not give us that option.  Unlike Triggs, Johnson was convicted after a bench trial, not a guilty plea, and the proceedings that led to his conviction for a misdemeanor crime of domestic violence were straight-forward, not "messy."  As a result, we must proceed through the analysis in order, identifying what it means for a domestic-violence misdemeanant to know he is a domestic-violence misdemeanant and then assessing the record to see whether it contains sufficient evidence to establish the defendant's requisite knowledge.  By doing so, we do not create a split with *Triggs* because *Triggs*'s decision to remand rested on "the complexity of the statutory definition" *in combination with* the "messy" state-court-conviction record.

in the indictment and in the sufficiency of the evidence stipulated to at the bench trial did not affect Johnson's substantial rights.[13]

We are not persuaded by Johnson's contentions to the contrary. Johnson's arguments rest mainly on the fact that he did not "know he was prohibited from federal possession of a firearm." He points to the fact that his Florida conviction never resulted in the loss of his civil rights, including his right to possess a firearm under Florida law. He also relies on the district court's statement at sentencing that "this is an unusual offense" because Johnson was charged with something he could "genuinely say [he] didn't know was unlawful."

While we can understand Johnson's frustration with the situation, these facts pertain to whether Johnson knew he personally was prohibited from possessing a firearm under federal law, not whether he knew he committed a misdemeanor crime of domestic violence. But under *Rehaif*'s knowledge-of-status requirement, that a defendant does not recognize that he personally is prohibited from possessing a

---

[13] The Dissent suggests that the outcome here would have been different in the absence of the *Rehaif* errors because "if Mr. Johnson had known that the government needed to prove he knew his status, it would have made no sense for him to stipulate to that point, instead of putting the government to its proof." Dissent at 53. We respectfully disagree. The sole reason why Johnson went to trial here was because he never lost his civil rights as a result of his conviction for a misdemeanor crime of domestic violence, and he thought that was a defense under Section 921(a)(33)(B)(ii). Johnson never suggested during his trial here that he did not know that he had been convicted of a misdemeanor crime that had as an element the use of at least "the slightest offensive touching" against his wife. And as we have explained, the record here establishes that Johnson, in fact, knew at the time he possessed the firearm here that he had been convicted of a misdemeanor crime that had as an element the use of at least "the slightest offensive touching" against his wife.

firearm under federal law is no defense if he knows he has a particular status and that status happens to be one prohibited by § 922(g) from possessing a firearm. *United States v. Maez*, 960 F.3d 949, 954-55 (7th Cir. 2020). Rather, that is a mistake of law, which is not a defense. *See Liparota*, 471 U.S. at 425 n.9. As we have mentioned, "a defendant generally must 'know the facts that make his conduct fit the definition of the offense,' even if he does not know that those facts give rise to a crime." *Elonis*, 575 U.S. at 2009 (quoting *Staples*, 511 U.S. at 608 n.3).

And to the extent that Johnson continues to assert that Section 921(a)(33)(B)(ii)'s exception to the definition of a domestic-violence misdemeanant for anyone whose civil rights have been restored applies to him because Florida never abrogated his rights in the first place, that argument is foreclosed under *Logan*, 552 U.S. 23. In *Logan*, the Supreme Court considered a materially indistinguishable exception that applies to the Armed Career Criminal Act. *Id.* at 26. The provision at issue there—18 U.S.C. § 921(a)(20)—authorized the disregarding of a prior conviction if the conviction "has been expunged, or set aside," or the offender "has been pardoned or has had civil rights restored." *Id.* Like Johnson, Logan had never had his civil rights abrogated in the first place, despite his otherwise-qualifying convictions under the Armed Career Criminal Act. *Id.* He contended that Section 921(a)(20)'s exception for those who had had their civil rights restored after an otherwise-qualifying conviction reached him. *Id.*

The Supreme Court disagreed. *See id.* It reasoned that the plain language of the provision, which used the word "restored," did not support Logan's construction. *Id.* at 31-32.

For further support, the Court pointed to Section 921(a)(33)(B)(ii), the very exception Johnson invokes here. The Court noted that it provides, in relevant part, that "[a] person shall not be considered to have been convicted of [a misdemeanor crime of domestic violence] [for purposes of Section 922(g)(9)] if the conviction . . . is an offense for which the person . . . has had civil rights restored (*if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense*) . . . ." *Logan*, 552 U.S. at 36 (quoting 18 U.S.C. § 921(a)(33)(B)(ii)) (emphasis added by *Logan* Court). As the Court explained, "the emphasized parenthetical qualification shows that the words 'civil rights restored' do not cover a person whose civil rights were never taken away."[14] *Id.* So Johnson's argument that he does not satisfy the definition of domestic-violence misdemeanant because Florida never abrogated his civil rights necessarily fails. And since Section 921(a)(33)(B)(ii) does not make Section 921(a)(33)'s definition of "misdemeanor crime of domestic

---

[14] Senator Lautenberg's statement on what became codified at 18 U.S.C. § 921(a)(33) reflects, as the Supreme Court in *Logan* believed, that Congress was aware that most people convicted of a misdemeanor do not lose their civil rights. *See* 142 Cong. Rec. S11872, S11877-78 (1996) (Statement of Sen. Lautenberg) ("Loss of [civil] rights generally does not flow from a misdemeanor conviction, and so this language is probably irrelevant to most, if not all, of those offenders covered because of the new ban [on firearm possession by domestic-violence misdemeanants].").

violence" inapplicable to someone whose civil rights were never breached in the first place, there was nothing for the government to refute with respect to the valid affirmative defenses encompassed within Section 921(a)(33)(B)(ii).[15]

## III.

Next, we turn to Johnson's contentions that Section 922(g)(9) is unconstitutional because (1) it violates Johnson's equal-protection rights under the Due Process Clause of the Fifth Amendment; and (2) it violates the Commerce Clause. Although we generally review de novo the constitutionality of a statute, we review such claims, when they are not raised in the district court, for plain error. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010). As with the *Rehaif* claims, Johnson did not make his constitutional arguments in the district court. So we review them for plain error.

## A.

---

[15] The Dissent suggests that the outcome of Johnson's proceeding would have differed in the absence of the *Rehaif* errors since the government would have been required to prove that Section 921(a)(33)(B)(ii)'s affirmative defenses did not apply to Johnson because Johnson invoked that exception to argue that he did not qualify as a domestic-violence misdemeanant. *See* Dissent at 55. But Johnson relied on Section 921(a)(33)(B)(ii) only because his civil rights were never abrogated. Section 921(a)(33)(B)(ii), though, provides no exception to the definition of domestic-violence misdemeanant for an otherwise-qualifying individual whose civil rights were never taken. A defendant cannot make an affirmative defense relevant by raising a ground that is not even arguably covered by that affirmative defense. Simply put, Johnson never properly raised an affirmative defense under Section 921(a)(33)(B)(ii) because he did not allege any of the conditions set forth by that section that would exempt him from having committed a "misdemeanor crime of domestic violence," so the government had no obligation to prove that that exception does not apply.

The terms of the Fourteenth Amendment guarantee equal protection of state law. U.S. Const. amend. XIV. When it comes to the concept of equal protection under federal law, the Fifth Amendment carries the load. *Hampton v. Mow Sun Wong*, 426 U.S. 88, 100 (1976). Unlike the Fourteenth Amendment, the Fifth Amendment contains no express equal-protection clause. *See* U.S. amend. V. But the Fifth Amendment's guarantee of due process under the law embodies within it the concept of equal justice under the law. *Hampton*, 426 U.S. at 100.

Johnson contends that *Logan*'s reading of Section 921(a)(33)(B)(ii), as applied to him, causes Section 922(g) to violate equal protection. As we have explained, under *Logan*, domestic-violence misdemeanants whose civil rights were never abrogated by the state where they were convicted are not excepted from Section 921(a)(33)'s definition of who has committed a "misdemeanor crime of domestic violence" for purposes of Section 922(g). 522 U.S. at 26. Yet those whose convictions—whether for misdemeanor crimes of domestic violence or for felonies—resulted in the forfeiture of their civil rights but who later had those civil rights restored do not violate Section 922(g) by possessing a firearm. *See* 18 U.S.C. § 921(a)(33)(B)(ii), (a)(20). Johnson argues that domestic-violence misdemeanants who never lost their civil rights in the first place are therefore unconstitutionally treated less favorably than those—both domestic-violence misdemeanants and felons—who have had their civil rights restored.

36

No Supreme Court or Eleventh Circuit case holds that Section 922(g)'s application to domestic-violence misdemeanants who never lost their civil rights but not to felons and to domestic-violence misdemeanants whose rights were abrogated but then restored violates equal protection. In this Circuit, when no Supreme Court or Eleventh Circuit precedent directly resolves a legal issue, no plain error on that issue can exist. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003). *Lejarde-Rada* governs the situation here. So here, Johnson cannot establish plain error.

**B.**

Johnson also argues that Section 922(g)(9) violates the Commerce Clause both facially and as applied. He contends that the Commerce Clause does not allow Congress to criminalize the intrastate possession of a firearm merely because the firearm once traveled in interstate commerce.

Once again, Johnson did not raise his argument in the district court. So once again, we apply plain-error review. This time, though, as Johnson recognizes, binding precedent addresses this issue. And that binding precedent rejects Johnson's position. In *United States v. McAllister*, we held that Section 922(g), which makes it illegal for a qualifying person to "possess *in or affecting commerce*, any firearm or ammunition," is a constitutional exercise of Congress's power under the Commerce Clause. 77 F.3d 387, 390 (11th Cir. 1996) (citing 18 U.S.C. § 922(g))

37

(emphasis added by *McCallister* court). We explained that Section 922(g) regulates firearms "that have a connection to interstate commerce; the statute explicitly requires such a connection" with its "in or affecting" language. *Id.*

Since we issued *McAllister*, others have also challenged Section 922(g) as an unconstitutional reach beyond what the Commerce Clause authorizes. And we have held there, as we hold here, that Circuit precedent forecloses that argument. *See United States v. Nichols*, 124 F.3d 1265, 1266 (11th Cir. 1997); *Wright*, 607 F.3d at 715. Under our prior-precedent rule, we must follow the precedent of earlier panels unless and until the prior precedent is overruled or undermined to the point of abrogation by the Supreme Court or this Court sitting en banc. *Steele*, 147 F.3d at 1318. As neither exception applies here, we reject Johnson's Commerce Clause argument.

## IV.

For the reasons we have explained, we affirm Johnson's conviction.

**AFFIRMED.**

MARTIN, Circuit Judge, concurring in part and dissenting in part:

As set forth in the majority opinion, Deangelo Johnson was convicted for violating 18 U.S.C. § 922(g)(9). This statute makes it unlawful for a person who has been convicted of a "misdemeanor crime of domestic violence" to possess a firearm. Last year, the Supreme Court clarified that a section 922(g) conviction requires the government to "show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." Rehaif v. United States, 588 U.S. ___, 139 S. Ct. 2191, 2194 (2019). Rehaif abrogated our prior precedent, see, e.g., United States v. Jackson, 120 F.3d 1226, 1229 (11th Cir. 1997) (per curiam), which required only a showing that a defendant knew he possessed a firearm but not that he knew his prohibited status. See United States v. Innocent, 977 F.3d 1077, 1082 (11th Cir. 2020); see also Rehaif, 139 S. Ct. at 2210 n.6 (Alito, J., dissenting). This development in the law recognized that "[w]ithout knowledge of [his prohibited] status," a defendant's "behavior may instead be an innocent mistake to which criminal sanctions normally do not attach." Rehaif, 139 S. Ct. at 2197. Respectfully, I believe the majority's approach dilutes the knowledge-of-status requirement from Rehaif that may result in the government sending people to prison for "innocent mistake[s]."

But I am not completely at odds with the majority opinion. For example, I

39

agree that Mr. Johnson cannot establish plain error on his claim that section 922(g)(9) violates equal protection. I also agree with the majority that Mr. Johnson cannot establish plain error on his claim that section 922(g)(9) violates the Commerce Clause. But I do not agree that Mr. Johnson was properly convicted under section 922(g)(9) because there is no proof he knew he had a status that prohibited his possession of a firearm. I therefore respectfully dissent.

## I

Here, I will highlight the legal background relevant to my understanding of this case. Section 922(g) describes various categories of people who are prohibited from possessing a firearm. That list includes felons, 18 U.S.C. § 922(g)(1); people committed to a mental institution, id. § 922(g)(4); immigrants unlawfully in the United States, id. § 922(g)(5); people dishonorably discharged from the Armed Forces, id. § 922(g)(6); and, relevant here, people convicted of a "misdemeanor crime of domestic violence," id. § 922(g)(9). Those who "knowingly violate[]" section 922(g) shall be fined, imprisoned for up to ten years, or both. Id. § 924(a)(2). In Rehaif, the Supreme Court considered the "scope of the word 'knowingly'" in the statute. 139 S. Ct. at 2194. It held that "knowingly" is a requirement for both a defendant's conduct (that the defendant must have knowingly possessed a firearm), and his relevant status (that he knew he was, for

example, a felon, an immigrant unlawfully in the United States, or a domestic-violence misdemeanant).  See id.

Under Rehaif then, in order for Mr. Johnson to be convicted under section 922(g)(9), he must have known both that he possessed a firearm and that he was convicted of a misdemeanor crime of domestic violence.  A "misdemeanor crime of domestic violence" might seem familiar in the lay sense, but its statutory definition is actually "quite complex."  See United States v. Triggs, 963 F.3d 710, 715 (7th Cir. 2020).  The term "misdemeanor crime of domestic violence" means an offense that

> is a misdemeanor under Federal, State, or Tribal law; and has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A).  Thus, to be absolutely clear, under Rehaif, in order for a person to be convicted of possessing a firearm under section 922(g)(9), he must have known that he was convicted of a misdemeanor crime of domestic violence that had, "as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon."  Id.

41

And that's not all. Under section 921(a)(33)(B), a person "shall not be considered to have been convicted" of a misdemeanor crime of domestic violence under certain circumstances. Id. § 921(a)(33)(B). For our purposes here, a person "shall not be considered to have been convicted" of a misdemeanor crime of domestic violence if he "has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)." Id. § 921(a)(33)(B)(ii). As I read the majority opinion, it characterizes section 921(a)(33)(B) as effectively setting forth affirmative defenses, such that the government is not required to "prove or disprove the defendant's knowledge of the components listed in subparagraph (B) to demonstrate that the defendant knew he was a domestic-violence misdemeanant, unless the defendant first brings forward evidence suggesting that his prior conviction is excepted from the definition of 'misdemeanor crime of domestic violence.'" Maj. Op. at 28; see id. at 20–28. Under this view, a defendant would have to come forward with evidence that he viewed his prior conviction as excepted under section 921(a)(33)(B) from the definition of a "misdemeanor crime of domestic violence," and only then must the government disprove the defendant's view in order to show he knew he was convicted of a misdemeanor crime of domestic violence.

I will accept the majority's characterization for the sole purpose of my analysis here.[1]  But I also emphasize what the majority recognizes in passing: once a defendant raises an exception under section 921(a)(33)(B), "the ultimate burden of persuasion remains with the prosecution."  Maj. Op. at 23; see United States v. Larouche, 723 F.2d 1541, 1543 (11th Cir. 1984).

## II

Now for the facts of this case.  In 2010, before his conviction under section 922(g)(9) at issue here, Mr. Johnson pled guilty to and was convicted of the misdemeanor "Battery (Domestic)" in Florida state court.  Specifically, Mr.

---

[1] For a few reasons, it is not obvious to me that section 921(a)(33)(B) sets out affirmative defenses as opposed to elements of the offense.  First, as the majority recognizes, the text "could indicate congressional intent to make the subparagraph (B) factors elements."  Maj. Op. at 23–24.  And I give weight to the term "unless" in the phrase "[a] person shall not be considered to have been convicted of such an offense for purposes of this chapter, unless" certain conditions are met.  See 18 U.S.C. § 921(a)(33)(B)(i).  The term "unless" introduces necessary conditions, such that it certainly could indicate congressional intent to make those conditions elements.  Cf. Santiago-Lugo v. Warden, 785 F.3d 467, 473 (11th Cir. 2015) (explaining the term "[u]nless" as used in a statute "lays out what must occur").

Most importantly though, I have deep reservations about putting the burden on a criminal defendant to avoid being convicted of a crime on the basis that he "is better situated than the government to demonstrate" those conditions.  Maj. Op. at 26.  It is true in every "criminal case the defendant has at least an equal familiarity with the facts and in most a greater familiarity with them than the prosecution.  It might, therefore, be argued that to place upon all defendants in criminal cases the burden of going forward with the evidence would be proper."  Tot v. United States, 319 U.S. 463, 469, 63 S. Ct. 1241, 1245–46 (1943).  "But the argument proves too much."  Id.  Finally, my concerns are deepened by the fact that, as the majority observes, see Maj. Op. at 22, neither party briefed this issue.  That being the case, I would have preferred that the majority assume without deciding that section 921(a)(33)(B) sets out affirmative defenses, thus saving the issue for when it is actually briefed and before our Court.  I do think this is a "tenable option" when Mr. Johnson has not raised this issue for our plain error review.  See id. at 22 n.8.  Notwithstanding my concerns about the majority's characterization, I accept it only for purposes of my analysis here.

Johnson was convicted of violating Florida Statutes § 784.03(1)(a). That provision says the "offense of battery occurs" when a person "[a]ctually and intentionally touches or strikes another person against the will of the other" or "[i]ntentionally causes bodily harm to another person." Fla. Stat. § 784.03(1)(a). Nothing in the record before us indicates that Mr. Johnson was ever made aware of the elements of his prior offense or that it might be a misdemeanor crime of domestic violence under federal law. And because his misdemeanor conviction did not prohibit Mr. Johnson from possessing a firearm under Florida law, see Fla. Stat. § 790.23(1) (2010), Johnson was not advised of his prohibited status when he entered his plea. His experience stands in contrast to most people who are sentenced for felony convictions who are advised of their status that prohibits them from possessing firearms.

During a traffic stop in 2018, a police officer saw a gun, which Mr. Johnson bought for protection, on the floorboard of Johnson's vehicle. A federal grand jury indicted Mr. Johnson, charging him with possession of a firearm after being convicted of a misdemeanor crime of domestic violence in violation of section 922(g)(9). Mr. Johnson moved to dismiss his indictment under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) for failure to state an offense. He argued that his domestic violence misdemeanor conviction fell under the exception in section 921(a)(33)(B). As set out above, that section says a person "shall not be

44

considered to have been convicted" of a misdemeanor crime of domestic violence if he "has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)." 18 U.S.C. § 921(a)(33)(B)(ii). In moving to dismiss his indictment, Mr. Johnson observed that Florida "never suspended his civil rights" because Florida does not prohibit domestic-violence misdemeanants from possessing a firearm, and thus "his rights did not require restoration." The District Court declined to dismiss Mr. Johnson's indictment. Mr. Johnson then proceeded with a stipulated bench trial, and he was found guilty. When sentencing Mr. Johnson for violating section 922(g)(9), the District Court observed that "it isn't often that individuals end up before the Court charged with something that they can genuinely say they didn't know was unlawful."

## III

With this legal and factual background in mind, I now turn to Mr. Johnson's Rehaif challenges to his indictment as well as the sufficiency of the evidence at trial. The majority correctly observes that Mr. Johnson did not raise his Rehaif arguments in the District Court. Maj. Op. at 10. That means we review those challenges for plain error. See United States v. Reed, 941 F.3d 1018, 1020 (11th Cir. 2019). Plain error exists when (1) there was error, (2) the error was plain, (3) the error affected the defendant's substantial rights, and (4) the error "seriously affect[ed] the fairness, integrity, or public reputation of a judicial proceeding."

45

United States v. Humphrey, 164 F.3d 585, 588 n.3 (11th Cir. 1999). To show that an error affected his substantial rights, a defendant must demonstrate a reasonable probability that, but for the errors, the outcome of the proceeding would have been different. Reed, 941 F.3d at 1021.

Applying this test, I agree with the majority that there were Rehaif errors here and that they were plain. See Maj. Op. at 11–14.[2] But I part ways with the majority's holding that those errors did not affect Mr. Johnson's substantial rights. Id. at 31–32. According to the majority opinion, "to satisfy Rehaif's knowledge-of-status requirement under Section 922(g)(9), the evidence must establish that Johnson knew all the following: (1) he had been convicted of a misdemeanor under state law; (2) to be convicted of that misdemeanor, he must have knowingly or recklessly engaged in at least 'the slightest offensive touching'; and (3) the victim was his current or former spouse at the time he committed the crime." Id. at 19–20 (footnotes and citations omitted).[3] The majority says these prongs are easily satisfied, so Mr. Johnson's substantial rights were not affected because he was due to be convicted under section 922(g)(9) regardless of Rehaif. Id. at 28–32.

_____

[2] The majority also correctly holds that Mr. Johnson did not invite error by stipulating that the facts were sufficient to convict him. Maj. Op. at 8–9.

[3] I understand the majority's test to apply only to Mr. Johnson's case, rather than to all criminal defendants subject to section 922(g)(9). Otherwise, the majority's test improperly excludes people convicted of a misdemeanor under non-state law, such as "Federal" or "Tribal" law, as well as people convicted of a misdemeanor crime of domestic violence involving victims other than current or former spouses, such as children. See 18 U.S.C. § 921(a)(33)(A).

46

I have three primary concerns about the majority's analysis. First, the majority fails to require, contrary to Rehaif, that Mr. Johnson actually knew his offense was a misdemeanor crime of domestic violence. Second, the majority relies on what Mr. Johnson knew at the time he was tried for the section 922(g)(9) violation (which is irrelevant under Rehaif), instead of what he knew when he had the firearm (which is what matters under Rehaif). Third, the majority errs in finding that the test for plain error review is not satisfied. I will address each of these misgivings in turn.

A

My first concern about the majority's approach relates to the government's proof of the "knowledge" requirement in order to obtain a conviction under section 922(g). Rehaif held that the government must show that a defendant "knew he had the relevant status" when he possessed the firearm. Rehaif, 139 S. Ct. at 2194. Therefore, I read Rehaif as requiring the government to show that Mr. Johnson knew he was "convicted in any court of a misdemeanor crime of domestic violence," which "means an offense that . . . has, as an element, the use or attempted use of physical force." 18 U.S.C. §§ 921(a)(33)(A)(ii), 922(g)(9). In other words, I understand Rehaif to require the government to show that Mr. Johnson actually knew he was convicted of an offense that had, "as an element, the use or attempted use of physical force" and thus qualified as a misdemeanor crime

47

of domestic violence.  Id. § 921(a)(33)(A)(ii).  Because it requires knowing a specific legal "element of the offense," knowledge of status under section 922(g)(9) is a "question of law."  See Rehaif, 139 S. Ct. at 2198.

The majority opinion requires the government to show less than I think the statute and Rehaif require.  The majority requires only that the government show a defendant knew his conviction required particular conduct, regardless of whether the defendant actually knew his conduct qualifies his offense as a misdemeanor crime of domestic violence.  For instance, under its test, the majority requires that the defendant knew that, to be convicted of his offense, "he must have knowingly or recklessly engaged in at least 'the slightest offensive touching.'"  Maj. Op. at 19 (footnote omitted).  Likewise, in applying its test to Mr. Johnson, the majority observes that Johnson stipulated at his bench trial that he "pled guilty to battery" and thus knew he "engaged in at least 'the slightest offensive touching.'"  Id. at 30.  But again, those facts might show Mr. Johnson knew of his conduct and the offense to which he pled guilty, but they do not show that Mr. Johnson knew his offense was a misdemeanor crime of domestic violence under federal law.

The Supreme Court said the government must show that a defendant "knew he had the relevant status" when he possessed the firearm.  Rehaif, 139 S. Ct. at 2194.  By this, I take the Supreme Court to mean that the government must show the defendant knew he had "been convicted in any court of a misdemeanor crime

48

of domestic violence."  18 U.S.C. § 922(g)(9).  It is irrelevant under section 922(g) and Rehaif that a defendant knows that an offense requires certain conduct for a conviction if he does not know that conduct ultimately makes the offense a misdemeanor crime of domestic violence.  I acknowledge that this is a subtle distinction, but it is one that matters.  In Rehaif, the Supreme Court recognized that a "mistake of law" is no defense when a defendant "claims to be 'unaware of the existence of a statute proscribing his conduct'" (which is not at issue here). Rehaif, 139 S. Ct. at 2198.  Yet it is a defense when, as in section 922(g)(9), that mistake of law "negat[es] an element of the offense."  Id.  Namely, a defendant who does not know that he has been convicted of a misdemeanor crime of domestic violence "does not have the guilty state of mind that the statute's language and purposes require."  Id.

My difference with the majority's position is exactly that: Mr. Johnson's mistake of law—that he did not know his prior offense was a misdemeanor crime of domestic violence—negates an element of the section 922(g)(9) offense.  I think the majority fails to engage with Rehaif's recognition that this mistake of law negates an element of the offense.[4]  Instead the majority asserts, citing to cases

---

[4] The majority says, "under Rehaif's knowledge-of-status requirement, that a defendant does not recognize that he personally is prohibited from possessing a firearm under federal law" is a "mistake of law, which is not a defense."  Maj. Op. at 32–33.  But that, of course, is not the mistake of law I refer to here.  Instead, I refer to a mistake of law that "negat[es] an element of the offense."  See Rehaif, 139 S. Ct. at 2198.

involving other statutes, that a defendant need only know the facts making his conduct unlawful. See Maj. Op. at 15–20. But even if a defendant knows the facts that resulted in his conviction for what is, in fact, a misdemeanor crime of domestic violence, he does not necessarily know it was a misdemeanor crime of domestic violence. In Rehaif, the Supreme Court said that, as is the case here, "a mistake of law is a defense if the mistake negates the 'knowledge . . . required to establish a material element of the offense.'" Rehaif, 139 S. Ct. at 2198.

I believe the government must show that a defendant knew he was "convicted in any court of a misdemeanor crime of domestic violence," which means he knew he was convicted of "an offense that . . . has, as an element, the use or attempted use of physical force." 18 U.S.C. §§ 921(a)(33)(A)(ii), 922(g)(9). That requires the government to prove the defendant was aware that his prior conviction included the element of use or attempted use of force. The majority says this requirement is met by a defendant's knowledge of his conduct. See Maj. Op. at 15–20 & n.7. I think the government's burden is heavier than that. For example, if a defendant pleads guilty to a battery offense, he very well may be informed of the elements of that offense by the judge during his plea colloquy or through a stipulation. In this hypothetical circumstance, there is a record showing that he knew he was convicted of an offense that "has, as an element, the use or attempted use of physical force." 18 U.S.C. § 921(a)(33)(A)(ii). Unlike this

50

hypothetical, I don't believe the record here is sufficient to attribute this knowledge to Mr. Johnson.

B

While my first concern about the majority's position looks to <u>what</u> the government must show the defendant knew, my second concern is about <u>when</u> the government must show he knew it. <u>Rehaif</u> requires that the defendant "knew he had the relevant status <u>when he possessed</u>" the firearm. <u>Rehaif</u>, 139 S. Ct. at 2194 (emphasis added). As an initial matter, I do not understand the majority's test to comport with this part of <u>Rehaif</u>. Rather, the majority opinion requires only that "Johnson knew all" necessary facts, Maj. Op. at 29, and then relies on Mr. Johnson's knowledge at the time of the proceedings on the section 922(g)(9) charge. Specifically, the majority looks to only two documents in the record to determine what Mr. Johnson knew: Johnson's stipulation at the trial of his section 922(g)(9) charge and the presentence investigation report from his sentencing after he was convicted for that crime. <u>Id.</u> at 28. Based on these two documents, the majority concludes that Mr. Johnson knew his offense "required that he had necessarily engaged in at least 'the slightest offensive touching.'" <u>Id.</u> at 28, 31. But neither of those documents show that Mr. Johnson "knew . . . <u>when he possessed</u>" the firearm that he was a domestic-violence misdemeanant. <u>Rehaif</u>,

139 S. Ct. at 2194 (emphasis added).  The documents merely tell us what he knew as he progressed through his section 922(g)(9) proceedings.

Federal courts see many defendants who have never before faced federal charges, and I've observed that they get quite an education about what can constitute a federal crime between the time they are arrested and the time they ultimately face trial or are sentenced.  For instance, the majority only cites Mr. Johnson's stipulation to show his purported knowledge of "the elements of [his battery] offense."  Maj. Op. at 30.  The stipulation says Mr. Johnson "knowingly and intelligently waived his right to a jury trial and pled guilty" to the battery offense.  According to the majority's reading of Bradshaw v. Stumpf, 545 U.S. 175, 125 S. Ct. 2398 (2005), Mr. Johnson's knowing and intelligent plea means he was "informed of the crime's elements."[5]  Maj. Op. at 30.  But the problem is that nowhere in that stipulation does it say Mr. Johnson knew the nature of his plea (and thus the elements of his offense) when he possessed the firearm.  The most we

---

[5] I read Stumpf differently than the majority.  The majority says Stumpf "explained that a knowing and intelligent plea requires that the defendant have been informed of the crime's elements."  Maj. Op. at 30.  But Stumpf said only that a plea is knowing and intelligent "where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel" or "by the trial judge."  Stumpf, 545 U.S. at 183, 125 S. Ct. at 2405.  Stumpf does not say that a defendant's statement that he knowingly and intelligently pled guilty is sufficient to show he knew the elements of his offense.  Rather, all it says is that "where the record accurately reflects" that a defendant knew the elements of his offense, then he knowingly and intelligently pled guilty.  Id.  We simply don't have that here.  We cannot assume that Mr. Johnson knew the elements of his offense solely because he stipulated that he knowingly and intelligently pled guilty to the battery offense.  This is especially true since he made that stipulation during his section 922(g)(9) proceedings and after he possessed the firearm.

52

can say is that the stipulation shows Mr. Johnson had knowledge of the nature of his plea during the section 922(g)(9) proceedings.  The majority says that the stipulation and presentence investigation report "identify what Johnson knew at the time that he pled guilty to the underlying" battery offense.  Id. at 29 n.11.  Again, I don't think they do.  Perhaps now Mr. Johnson understands the nature of his prior conviction.  But nothing in Rehaif is concerned about after-the-fact knowledge like this.  I worry that the majority's reliance on documents purportedly showing Mr. Johnson's knowledge after he possessed the firearm will pave the way for the government to rely on such deficient evidence in the future.

## C

My final concern with the majority's position is its conclusion that the test for plain error review is not satisfied.  See Maj. Op. at 31–32.  For the reasons discussed here, I would easily conclude that Mr. Johnson has shown that the Rehaif errors affected his substantial rights.  I've found nothing in the record showing that Mr. Johnson knew, at the time he possessed the firearm, that his prior conviction had, "as an element, the use or attempted use of physical force," 18 U.S.C. § 921(a)(33)(A)(ii), and consequently was a misdemeanor crime of domestic violence.  This being the case, if Mr. Johnson had known that the government needed to prove he knew his status, it would have made no sense for him to stipulate to that point, instead of putting the government to its proof.  Thus, he has

53

shown a reasonable probability that the outcome of the proceeding would have been different.  Reed, 941 F.3d at 1021.  Mr. Johnson's resulting prison sentence, when he did not know the status for which he was convicted, makes it clear to me that this error "seriously affect[ed] the fairness, integrity, or public reputation of a judicial proceeding."  Humphrey, 164 F.3d at 588 n.3.

Were it up to me, I would follow the Seventh Circuit's approach in Triggs.  Like Mr. Johnson, Robert Triggs challenged his section 922(g)(9) conviction under Rehaif.  Triggs, 963 F.3d at 712.  The Seventh Circuit held that Mr. Triggs established plain error because he "carried his burden to establish a reasonable probability that he would not have pleaded guilty had he known of the government's Rehaif burden."  Id. at 717.  The Seventh Circuit observed that Mr. Triggs had a "potentially viable avenue of defense" because the "government had to prove that he knew he had been convicted of a 'misdemeanor crime of domestic violence,'" and the record nowhere showed that the "elements" of his prior conviction were ever provided or explained to him.  See id. at 715–16.  As in Triggs, nothing in this record indicates that Mr. Johnson knew, at the time when he possessed the firearm, that he had been convicted of a misdemeanor crime of domestic violence, which requires he knew his battery offense had, "as an element, the use or attempted use of physical force."  18 U.S.C. § 921(a)(33)(A)(ii).  This comes as no surprise to me, as the legal definition of a misdemeanor crime of

54

domestic violence is "quite complex." Triggs, 963 F.3d at 715. Indeed, the "[m]embers of [the Supreme] Court have been unable to agree on the meaning" of a crime of domestic violence, even "after briefing, argument, and careful study" in numerous cases. Rehaif, 139 S. Ct. at 2208 (Alito, J., dissenting). If the Supreme Court has been grappling for years with the meaning of a crime of a domestic violence, I think Mr. Johnson certainly has a "plausible defense" that he didn't know that meaning either. See Triggs, 963 F.3d at 717. He therefore didn't know his status and so has "establish[ed] a reasonable probability" that the outcome of the proceeding would have been different "had he known of the government's Rehaif burden." Id.

But even putting aside my other misgivings and the wisdom of Triggs, I think this record affirmatively shows a reasonable probability that the outcome of the proceeding would have been different. Namely, when Mr. Johnson moved to dismiss the indictment, he argued that his domestic violence misdemeanor conviction fell under the exception in section 921(a)(33)(B)(ii). As a refresher, that section says a person "shall not be considered to have been convicted" of a misdemeanor crime of domestic violence if he "has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)." 18 U.S.C. § 921(a)(33)(B)(ii). In Mr. Johnson's view, he qualified for

55

that exception because he was never prohibited from possessing a gun under Florida law.

Remember, according to the majority opinion, when a defendant puts forward evidence that he viewed his prior conviction as excepted under section 921(a)(33)(B) from the definition of a "misdemeanor crime of domestic violence" (which Mr. Johnson did, as shown by his motion to dismiss), the government has the burden of persuasion and must disprove that view in order to show the defendant knew he was convicted of a misdemeanor crime of domestic violence. Maj. Op. at 28; see also id. at 20–28. Regardless of whether Mr. Johnson's section 921(a)(33)(B) argument would ultimately be meritorious, see id. at 33–35, the question under the plain error analysis is whether there is a reasonable probability that the outcome of the proceeding would have been different. Reed, 941 F.3d at 1021. If Mr. Johnson had known that the government had to "disprove" his view that "his prior conviction [was] excepted from the definition of 'misdemeanor crime of domestic violence,'" Maj. Op. at 28, it seems clear that Mr. Johnson would have put the government to its proof on this issue.[6]

---

[6] The majority says the outcome of the proceeding would not have been different because Mr. Johnson "never properly raised an affirmative defense under Section 921(a)(33)(B)(ii)." Maj. Op. at 35 n.15. This assertion is troubling. The question on plain error review is not whether Mr. Johnson had a proper affirmative defense that "arguably" would have succeeded. Id. Instead, the question is whether Mr. Johnson would have required the government to disprove his view (regardless of whether his view is proper) that an exception applied had he known the government needed to do so. I certainly think so, and if so, there is a reasonable

## IV

I view today's decision as relieving the government of its burden to obtain convictions under section 922(g).  Both the statute and Rehaif require more for a section 922(g) conviction than the government will now be called upon to show.  As I understand this decision, the government will not now need to show, as Rehaif requires, that a defendant actually knew his offense was a misdemeanor crime of domestic violence.  And under the majority's decision, the government can rely on a defendant's knowledge after his actual possession of the firearm, as opposed to, again as Rehaif requires, his knowledge when he possessed the firearm.  I also believe the majority's decision does all that while conducting a flawed plain error review and creating a split with the Seventh Circuit in Triggs.[7]

---

probability that the outcome of the proceeding would have been different.  Reed, 941 F.3d at 1021.

[7] The majority disavows its split with Triggs because Triggs involved "messy" proceedings.  Maj. Op. at 31 n.12.  I don't think this is a proper distinction.  The Seventh Circuit said that the "complexity of the statutory definition" (before ever discussing any "messy" proceedings) "open[ed] a potentially viable avenue of defense."  Triggs, 963 F.3d at 716.  I, like the Seventh Circuit, believe that "the complexity of the statutory definition" of a misdemeanor crime of domestic violence gives a defendant "at least a plausible argument" that he was unaware he had been convicted of such an offense.  Id.  However, the majority, unlike the Seventh Circuit, gives no leeway for the complex statutory definition to be relevant, so long as the defendant knew the facts making his conduct unlawful.  See Maj. Op. at 15–20.  But even assuming the Seventh Circuit remanded in Triggs based in part on "messy" proceedings, those proceedings were characterized that way because the "elements" of the prior offense were never provided to Mr. Triggs.  See Triggs, 963 F.3d at 716.  This being the case, I view the proceedings here to be "messy" too and see a split with the Seventh Circuit on that ground as well.

Like the District Court, I view this as an "unusual offense," because Mr. Johnson was charged with something he can "genuinely say [he] didn't know was unlawful." For his conviction under this statute, that matters. I respectfully dissent.