[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-11877

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

*versus*

IDRIS SHAMSID-DEEN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:18-cr-00071-MTT-CHW-1

_____

Before JILL PRYOR, BRANCH, and ED CARNES, Circuit Judges.

ED CARNES, Circuit Judge:

Under the federal criminal code, various categories of people are prohibited from possessing firearms. *See* 18 U.S.C. § 922(g). The category that most frequently results in a charge for unlawfully possessing a firearm consists of those who have been convicted in any court of "a crime punishable by imprisonment for a term exceeding one year." *See id.* § 922(g)(1). A smaller category, and one that is not as well-known, consists of people who have been "convicted in any court of a misdemeanor crime of domestic violence." *See id.* § 922(g)(9). This case is about that smaller category. It involves a firearms possession charge based on a previous domestic violence misdemeanor conviction.

The question before us arises from an exception contained in the statutory definition of the term "misdemeanor crime of domestic violence." *Id.* § 921(a)(33). Under the exception, an otherwise qualifying previous conviction that was obtained without a jury trial does not count unless "the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise." *Id.* § 921(a)(33)(B)(i)(II)(bb).

Idris Shamsid-Deen, found in possession of a firearm, was charged with violating § 922(g)(9) based on a previous misdemeanor conviction for battery under the Georgia Family Violence Act, O.C.G.A. §§ 16-5-23.1, 19-13-1. The district court granted his pretrial motion to exclude evidence of that previous conviction

after determining that his waiver of a jury trial in the earlier state proceeding resulting in the conviction had not been knowing and intelligent. Because that pretrial ruling left the government without any evidence to prove the prior qualifying conviction element of the charged § 922(g)(9) offense, the government filed this appeal. *See* 18 U.S.C. § 3731.

## I. The Procedural History and Facts

### A. The 2014 Georgia Misdemeanor Battery Conviction

After a fight with his girlfriend, Shamsid-Deen was charged in Bibb County, Georgia, in December 2013 with misdemeanor battery under Georgia's Family Violence Act, O.C.G.A. §§ 16-5-23.1, 19-13-1. Minutes before a bench trial of that charge was scheduled to begin in the state court of that county in April 2014, the prosecutor, defense counsel, and Shamsid-Deen signed both sides of a double-sided form.

The first side of the form explained the right to counsel and noted that "an attorney has education and experience concerning . . . how to select a jury if I desire a jury trial." Doc. 70-2. This same side of the form gave Shamsid-Deen three options, and he initialed next to the one containing this statement: "I desire to be represented by an attorney and will pursue all diligent and reasonable efforts to hire one, if I have not already done so." *Id.*

The second side of the form, titled "Record of the Court," explained some procedural matters and the consequences of

various kinds of pleas. Doc. 70-3. It also contained the following language:

> I am fully aware that upon a not guilty plea, I have the *right to a trial*, either *before a jury* or the Court . . . . I understand that if I plead guilty, I will waive (give up) these rights to a trial. . . . I also understand that a conviction on certain offenses may affect my . . . right to possess a firearm.

*Id.* (emphasis added). This same side of the form included two pleading options, "guilty plea" and "not guilty plea," and a line next to each for the defendant to initial the selected option. *Id.* Shamsid-Deen initialed the line next to "not guilty plea," which provided:

> I plead NOT GUILTY to the charge(s) against me and request a non jury trial. I *knowingly and voluntarily waive (give up) my right to a trial before a jury* of six persons chosen from citizens of Bibb County called for jury duty who would hear the evidence and law and decide if I am guilty or not guilty. *I want my case to be heard and decided by the Judge acting without a jury*.

*Id.* (emphasis added).

The judge also signed this second side of the form, just below this statement: "Upon inquiry in this case as required by law, the Court finds that the plea of the Defendant is freely and voluntarily entered and any waiver of rights is done with a full understanding of those rights and with an understanding of the charges against the Defendant." *Id.*

Neither side of the form contained a place for a defendant to sign, initial, or check to indicate that he wanted to plead not guilty and have a jury trial.

At the start of the bench trial itself, the prosecutor told the judge that Shamsid-Deen wished "to plead not guilty" and "proceed with his attorney" to "have a non-jury trial before [the court] this afternoon." The court replied, "Mr. Shamsid-Deen, is that what you want to do?" Shamsid-Deen answered, "Yes, sir."

After hearing testimony from the victim, the investigating police officer, and Shamsid-Deen, the court found him guilty of battery under the Georgia Family Violence Act. Before sentencing, defense counsel asked the court to consider that Shamsid-Deen had "proceeded on a non-jury basis to avoid the trial tax," and explained: "[A] lot of times I tell defendants, you know, I like bench trials because you don't waste jurors' time, and it helps you sort of avoid the trial tax sometimes." By "trial tax," Shamsid-Deen's lawyer meant the "perception that state-court defendants electing a jury trial face harsher sentences." The court sentenced Shamsid-Deen to 12 months jail time, to be served on probation.

### B. The § 922(g)(9) Federal Indictment and Proceedings

About three-and-a-half years later, in November 2017, Shamsid-Deen was found in possession of a revolver. Based on that and his Georgia battery conviction, he was indicted in December 2018 for violating § 922(g)(9) by possessing a firearm after conviction of a misdemeanor crime of domestic violence. He filed three

motions to dismiss the indictment, each one asserting some variation of this contention: his Georgia battery conviction did not qualify as a misdemeanor crime of domestic violence because he hadn't knowingly and intelligently waived his right to a jury trial, which under § 921(a)(33)(B)(i)(II)(bb) is an exception to § 922(g)(9). And each time, the district court rejected that argument as a premature request to determine the sufficiency of the evidence supporting an affirmative defense to the § 922(g)(9) charge.

During a hearing on the motions to dismiss, the court heard testimony from the Bibb County Solicitor General about the county court's general procedures in 2014, when Shamsid-Deen was convicted of domestic violence battery. The Solicitor General testified that unrepresented misdemeanor defendants in Bibb County typically attended a mass "cattle call" initial appearance where they each received a copy of the standard, double-sided form and, as a group, heard a judge explain their rights. But that procedure changed if a defendant had a lawyer, as Shamsid-Deen did. Where a defendant had a lawyer, Bibb County treated the lawyer's entry of appearance as a waiver of the initial appearance and "relie[d] upon that person's attorney to explain their rights to them."

The Solicitor General testified that "any time a defendant is represented — the only way for a defendant to get off of a jury trial calendar is for the defendant or the defendant's attorney to request a plea or a non-jury trial; otherwise, we proceed — our default is to go to jury trial." At the time Shamsid-Deen was convicted, a defendant's case "automatically [was] put on the jury calendar,"

and defendants didn't "get onto a non-jury trial calendar without asking for it" because "the default [was] a jury." When asked about "what opportunities" a defendant who wanted a jury trial would "have had to ask for that jury trial," the Solicitor General replied: "They don't even have to ask; they are automatically going on a jury trial term. . . . That's the default."

The Solicitor General also testified about Shamsid-Deen's case in particular. After reviewing his case file, she explained that he had been "scheduled for first appearance on January 10th, 2014," where "he would have heard his rights recited by the judge" and "would have received a copy of the Record of the Court and Waiver of Rights form." She stated that there was a notation on his file in her handwriting that said "to hire lawyer," and she explained: "[I]f I wrote 'to hire lawyer,' that means I talked to him, and he would have gotten his rights sheet, and he would have heard the judge's — one of the judges recite the rights." Although she didn't know whether she was "the one who took the case all the way through," she did know that it was her handwriting on the form from "that Friday morning arraignment."

As we have mentioned, the court ultimately denied Shamsid-Deen's motions to dismiss. But the court noted that if Shamsid-Deen could "think[] of a way to get before [it] the issue of whether his jury trial waiver was effective," the court would consider that issue. The court also "tentatively agree[d]" with the government's suggestion that "an appropriate vehicle to raise" the waiver issue was a Fed. R. Evid. 104(a) hearing. Shamsid-Deen

quickly filed a Rule 104 motion in limine asking the court to exclude the evidence of his Georgia battery conviction.

In his motion, Shamsid-Deen noted that the form he had signed minutes before his bench trial contained only two plea options, neither of which allowed him to choose a jury trial. He also pointed out that "despite explaining that the person has a right to a jury trial, the form does not explain *how* the accused invokes his right to a jury trial." And he explained that a Bibb County defendant in 2014 who had a lawyer "generally" did not attend an initial appearance or hear a judge explain his rights; instead, the county relied on the defendant's lawyer "to explain his rights to him."

Shamsid-Deen also asserted that while he "may have been present for his initial appearance on January 10, 2014," the parties agreed it was "unknown" whether he was actually there. What was "known" was that he wanted to plead not guilty and had selected the only option on the form he signed for doing that, which was "pleading not guilty, but waiving his right to a jury trial." He added that the government hadn't shown that when he pleaded guilty to the Georgia domestic violence battery charge that anyone had explained to him his right to a jury trial, had told him how to exercise that right, or had given him the option of exercising that right. In his view, the government had the burden of persuasion and, given the lack of proof that he had knowingly and intelligently waived his right to a jury trial, the Georgia domestic violence battery conviction was not admissible.

Based on those assertions, Shamsid-Deen contended the court should exclude the evidence of his Georgia battery conviction under Rule 104(a). He argued that the § 921(a)(33)(B)(i)(II)(bb) exception made proof of a knowing waiver a "necessary precondition" to his conviction qualifying as a misdemeanor crime of domestic violence. And because the conviction didn't qualify, it wasn't relevant evidence and, under Rule 104(a), it wasn't admissible.

In response to Shamsid-Deen's motion in limine, the government contended that, as the moving party, Shamsid-Deen had both burdens — production and persuasion — and hadn't met either one. It argued that he had the burden of production because the § 921(a)(33)(B) exception is an affirmative defense. And he had the burden of persuasion because he was "likely to have significantly more knowledge" about his Georgia battery conviction than the prosecutor would, so putting the burden on him "maximizes the likelihood of more accurate fact finding."

The government noted that Shamsid-Deen had chosen not to call his former lawyer as a witness even after the district court asked him if he wanted to do so. And it pointed out that Shamsid-Deen had waived his right to a jury trial in another misdemeanor case five years before the misdemeanor battery conviction in question. That, the government argued, was "some evidence" of Shamsid-Deen's "familiarity with the process for waiving the right to a jury trial." Finally, the government argued the court should assess admissibility under subsection (a) of Rule 104 instead of

under subsection (b) because subsection (a) is a better pretrial vehicle for addressing questions of law like whether Shamsid-Deen knowingly and intelligently waived his right to a jury trial.

Shamsid-Deen contended that the jury waiver form he had signed before his bench trial was itself enough evidence to grant his motion because it was coercive. That form, he argued, was coercive because it failed to explain how he could assert the right to a jury trial, essentially "directing" defendants who wanted to plead not guilty toward bench trials by giving them only that option. In addition, the form was changed in 2018, four years after Shamsid-Deen's bench trial and conviction, to include three plea options instead of two. The additional option on the newer form allows a defendant to initial a blank line indicating his choice to plead not guilty and request a jury trial.

As for the lack of testimony from his attorney in the Georgia state battery proceedings about their conversations during those proceedings, Shamsid-Deen contended that the absence of that testimony actually established his right to relief. Without any evidence about what his attorney had told him, the party with the burden of persuasion on the jury waiver issue would lose, and he argued that party was the government. The government countered that it was Shamsid-Deen who had the burden of proving that his waiver was not valid, and the general procedures of the county court put the waiver form in context and supported a conclusion that Shamsid-Deen's waiver was knowing.

The district court granted Shamsid-Deen's motion to exclude evidence of his Georgia domestic violence battery conviction. It noted that the parties agreed § 921(a)(33)(B)(i)(II) is an affirmative defense, and it believed that they were correct because the provision meets the three-part test this Court has used to determine whether to treat an exception to a criminal statute as an affirmative defense. *See United States v. McArthur*, 108 F.3d 1350, 1353 (11th Cir. 1997) (noting that we "begin with the language and structure of the statute," then "examine the legislative history of the provision," and finally "decide whether the defendant or the government is better situated to adduce evidence tending to prove or disprove the applicability of the exception").

The court also found that "the affirmative defense established by § 921[(a)](33)(B)[(i)](II) does not negate an element of the § 922(g)(9) offense." That's because the exception in § 921(a)(33)(B) is "wholly separate from the definition" of a misdemeanor crime of domestic violence in § 921(a)(33)(A), which means a conviction could both qualify as a § 922(g)(9) offense under subsection (A) and "nonetheless be subject to the exception in subsection (B)." So the court found that Shamsid-Deen had the burden of production, which "generally rests on the defendant" when "an affirmative defense does not negate an element of the crime."

The district court then turned to the burden of persuasion issue, which it acknowledged was a more difficult one. The court concluded that our statement in *United States v. Laroche*, 723 F.2d

1541, 1543 (11th Cir. 1984), that the government had the burden of persuasion for affirmative defenses created through statutory exceptions was only dicta. *See Welch v. United States*, 958 F.3d 1093, 1098 (11th Cir. 2020) ("[D]icta is not binding on anyone for any purpose."); *United States v. Pickett*, 916 F.3d 960, 966 (11th Cir. 2019); *In re BFW Liquidation, LLC*, 899 F.3d 1178, 1186 (11th Cir. 2018). Finding no binding Eleventh Circuit precedent, the district court was persuaded by the First Circuit's reasoning in *United States v. Hartsock*, 347 F.3d 1 (1st Cir. 2003). In that case, the First Circuit reasoned that because the government will rarely have access to evidence about a defendant's waiver, saddling it with the burden of persuasion would "substantially hamper" its ability to enforce § 922(g). *See id.* at 9–10. Agreeing with that reasoning, the district court found that Shamsid-Deen had the burden of persuasion as well as the burden of production.

After putting both burdens on Shamsid-Deen, the district court was persuaded that he had carried both of them and that he had established his waiver of a jury trial of the 2014 Georgia domestic violence battery charge had not been knowing and intelligent. It had not been because the waiver form he had signed "did not unequivocally apprise defendants of their jury trial rights" and there was no evidence that Shamsid-Deen's attorney had explained those rights to him. The form was also structurally misleading because it offered only two plea options, which Shamsid-Deen "could have reasonably concluded . . . were the *only* options available to him."

The court found that the form's flaws were not cured by the bench trial record in the Georgia case, which showed what it called "no evidence of an effective jury trial waiver." The court thought that the brief colloquy between Shamsid-Deen and the judge "simply confirm[ed] the executed form — of the two options available, Shamsid-Deen opted for a bench trial." It recognized that Shamsid-Deen's former attorney's reference to avoiding a "trial tax" indicated that the attorney "may have made a strategic decision to waive a jury trial." But the court thought that even if the attorney had made that decision, there was "no indication that Shamsid-Deen understood the rights that counsel had relinquished." And the court found that Bibb County's general court practices didn't show Shamsid-Deen's waiver was valid because, while there was evidence he may have been present at his initial appearance to hear a judge explain his rights, there was also some evidence that his scheduled appearance had been canceled because he had obtained an attorney the day before the appearance was to occur.

Finally, the district court noted that it had given the parties time to consider whether to present Shamsid-Deen's testimony or testimony from his former lawyer. But "[w]hatever significance can be attached to the absence of" their testimony, the court thought that it did "not undermine" the court's finding that the evidence, particularly the form, was "more than sufficient to warrant the conclusion that Shamsid-Deen did not knowingly and intelligently waive his right to a jury trial." Because Shamsid-Deen's

waiver wasn't knowing and intelligent, the court granted his pre-trial motion to exclude evidence of his Georgia domestic violence battery conviction.

## II. Analysis

Under 18 U.S.C. § 922(g)(9), it is unlawful for a person "who has been convicted in any court of a misdemeanor crime of domestic violence" to "possess in or affecting commerce, any firearm or ammunition." A separate provision, § 921(a)(33), defines "misdemeanor crime of domestic violence" as an offense that both is a misdemeanor under any law and:

> has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, by a person similarly situated to a spouse, parent, or guardian of the victim, or by a person who has a current or recent former dating relationship with the victim.

*Id.* § 921(a)(33)(A). A different subsection of § 921(a)(33) provides exceptions to that definition, including that:

> A person shall not be considered to have been convicted of [a misdemeanor crime of domestic violence] for purposes of this chapter, unless . . . in the case of a

> prosecution for an offense . . . for which a person was
> entitled to a jury trial . . . the person knowingly and
> intelligently waived the right to have the case tried by
> a jury . . . .

*Id.* § 921(a)(33)(B)(i)(II)(bb).

"A defendant may waive his Sixth Amendment right to a jury trial when: (1) he gives express, intelligent consent; (2) the government consents; and (3) the waiver is approved by the responsible judgment of the trial court." *United States v. Diaz*, 540 F.3d 1316, 1321 (11th Cir. 2008) (quotation marks omitted). The trial court to which the waiver is submitted must determine whether it is knowing and intelligent based on the circumstances of the case. *Id.* By alerting the state trial court to Shamsid-Deen's desire to proceed without a jury, the prosecutor for his Georgia domestic violence battery charge indicated the government's consent to his waiver of a jury. And by proceeding to try Shamsid-Deen without a jury, the state trial court approved his waiver of a jury.

The ultimate question we must answer is whether, as the district court concluded, Shamsid-Deen did not knowingly and intelligently waive his right to a jury trial in the state proceeding that led to his conviction of misdemeanor battery under Georgia's Family Violence Act. If he didn't, the district court's order excluding any evidence of that conviction is due to be affirmed. Otherwise, that order is due to be reversed.

We first decide what standard of review applies to the district court's decision. We then decide which party has the burden of production and which one has the burden of persuasion. Once those legal premises are determined, we apply them to the relevant facts in the record before us.

## A. Standard of Review

### 1. For the § 921(a)(33)(B)(i)(II)(bb) Exception

We have never decided what standard of review applies to a district court decision excluding evidence of a prior conviction based on the court's conclusion that the conviction fell into a statutory exception that encapsulates a constitutional defect in the proceedings leading to the conviction. We have, however, decided the standard of review that applies to circumstances analogous to the present one.

The analogous circumstances we are talking about are *not* those involving run-of-the-mill evidentiary and trial procedure rulings of the type that routinely arise in nearly every trial. The normal, typical, usual standard for reviewing normal, typical, usual evidentiary and trial procedure rulings is abuse of discretion. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997) (stating, in a case involving admission of expert opinion evidence, that "abuse of discretion is the proper standard of review of a district court's evidentiary rulings"); *United States v. Abel*, 469 U.S. 45, 53–55 (1984) (reviewing for abuse of discretion a district court's determination about whether the prejudicial effect of evidence outweighed its

probative value); *United States v. Barsoum*, 763 F.3d 1321, 1341 (11th Cir. 2014) (reviewing for abuse of discretion the denial of a motion for new trial on the basis of newly discovered evidence).

There are good reasons why abuse of discretion is the standard of review in those circumstances. For one thing, "as a matter of the sound administration of justice," it is wise to vest discretion in the "judicial actor . . . better positioned than another to decide the issue in question." *Pierce v. Underwood*, 487 U.S. 552, 559–60 (1988) (quotation marks omitted). "Immersed in the case as it unfolds, a district court is more familiar with the procedural and factual details and is in a better position to decide" many evidentiary and similar issues. *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005); *see also Cooter & Gell v. Hartmax Corp.*, 496 U.S. 394, 404 (1990) (recognizing the value of "[d]eference to the determination of courts on the front lines of litigation"); *United States v. Whatley*, 719 F.3d 1206, 1219 (11th Cir. 2013) ("Our deferential standard respects that the district court has a better vantage point from which to make this judgment call.").

We have also recognized that "the district court is uniquely situated to make nuanced judgments on questions that require the careful balancing of fact-specific concepts like probativeness and prejudice, and we are loathe to disturb the sound exercise of its discretion in these areas." *United States v. McGregor*, 960 F.3d 1319, 1324–25 (11th Cir. 2020) (quoting *United States v. Jernigan*, 341 F.3d 1273, 1285 (11th Cir. 2003)). And sometimes deferential review is necessary to give the district court the "flexibility to resolve

questions involving multifarious, fleeting, special, narrow facts that utterly resist generalization." *Cooter & Gell*, 496 U.S. at 404 (quotation marks omitted).

There's another reason that purely evidentiary and trial procedure issues get abuse of discretion review and not *de novo* review: giving them *de novo* review would encourage more appeals, which would not be a good thing. *See id.* (noting an abuse of discretion standard "will also discourage litigants from pursuing marginal appeals, thus reducing the amount of satellite litigation"); *Brown*, 415 F.3d at 1266 ("And we don't want to denigrate the importance of the trial and encourage appeals of rulings relating to the testimony of expert witnesses.").

Rulings on issues of law, including those that apply law to fact, are a different matter. *De novo* review of issues of law is appropriate because a court of appeals is in as good a position to decide them as a district court is. Not only that, but a non-deferential standard of review is necessary for what the Supreme Court has recognized as a federal appellate court's "primary function as an expositor of law." *Miller v. Fenton*, 474 U.S. 104, 114 (1985); *see also Cooter & Gell*, 496 U.S. at 404 (referring to "the normal law-clarifying benefits that come from an appellate decision on a question of law") (quotation marks omitted).

With an abuse of discretion standard there is often "a range of choice for the district court" within which we will affirm the court's decision regardless of which way it rules, "so long as that choice does not constitute a clear error of judgment." *In re*

*Rasbury*, 24 F.3d 159, 168 (11th Cir. 1994) (quotation marks omitted). As we explained about our affirmance in *Rasbury*:

> Quite frankly, we would have affirmed the district court had it reached a different result, and if we were reviewing this matter *de novo*, we may well have decided it differently. By definition, however, under the abuse of discretion standard of review there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call. That is how an abuse of discretion standard differs from a *de novo* standard of review.

*Id.*; *accord, e.g.*, *United States v. Frazier,* 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc).

This means that if we reviewed legal issues only for an abuse of discretion and two district courts (or the same district court in different cases) decided an identical legal issue in opposite ways, we could affirm both of them so long as neither decision constituted a clear error of judgment. *See Rasbury*, 24 F.3d at 168; *Frazier*, 387 F.3d at 1259; *MSP Recovery Claims, Series LLC v. Hanover Ins. Co.*, 995 F.3d 1289, 1296 (11th Cir. 2021) ("Of course, by saying that the district court did not abuse its discretion [in deciding not to award attorney's fees and costs], we do not address whether another or even the same district court could properly decide to award attorney's fees and costs when faced with a substantially similar removal."). The strength of the abuse of discretion standard is that it provides district courts with some flexibility in deciding evidentiary and trial procedure matters. The strength of the *de*

*novo* standard is that it does not; it sacrifices district court flexibility in favor of clarity, uniformity, and consistency in the decision of legal issues.

That is why we review district court decisions of constitutional issues — the most important issues of law — not for abuse of discretion but *de novo. See, e.g., United States v. Dennis*, 26 F.4th 922, 926 (11th Cir. 2022) ("We review questions of law *de novo.*"); *United States v. Underwood*, 446 F.3d 1340, 1345 (11th Cir. 2006) ("We review questions of constitutional law *de novo.*"); *United States v. Brown*, 364 F.3d 1266, 1268 (11th Cir. 2004); *Nichols v. Hopper*, 173 F.3d 820, 822 (11th Cir. 1999). To use a formulation that is especially relevant for this case, we have held that: "When an evidentiary ruling implicates a constitutional question, we review those legal questions *de novo.*" *United States v. Machado*, 886 F.3d 1070, 1085 n.14 (11th Cir. 2018).

*De novo* review also applies to review of decisions of non-constitutional issues of law. *See, e.g., U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 965 (2018); *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011); *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313–14 (11th Cir. 2021); *Talamantes-Enriquez v. U.S. Att'y Gen.*, 12 F.4th 1340, 1347 (11th Cir. 2021); *Senter v. United States*, 983 F.3d 1289, 1291 n.3 (11th Cir. 2020); *United States v. Goldman*, 953 F.3d 1213, 1223 (11th Cir. 2020).

And *de novo* is the standard used in reviewing the issues of law in mixed questions of law and fact. *See, e.g.*, *U.S. Bank Nat. Ass'n*, 138 S. Ct. at 967 (noting that when mixed questions "require courts to expound on the law, particularly by amplifying or elaborating on a broad legal standard," or "when applying the law involves developing auxiliary legal principles of use in other cases," courts "should typically review a decision *de novo*"); *Wallace v. Jaffree*, 472 U.S. 38, 76 (1985) (O'Connor, J., concurring) (noting that certain First Amendment issues "are mixed questions of law and fact that are properly subject to *de novo* appellate review"); *United States v. Gonzalez-Zea*, 995 F.3d 1297, 1301 (11th Cir. 2021) ("Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error and its application of the law to the facts *de novo*.") (quoting *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011)); *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) ("In an appeal from a section 2255 proceeding, we review legal conclusions *de novo* and factual findings for clear error.").

Because the validity of a waiver of a constitutional right — whether it was knowing, intelligent, and voluntary — presents a mixed question of law and fact, we have consistently held that a district court's decision about it is subject to *de novo* review. *See United States v. Garey*, 540 F.3d 1253, 1268 (11th Cir. 2008) (en banc) (waiver of counsel); *United States v. Hakim*, 30 F.4th 1310, 1318 (11th Cir. 2022) (waiver of counsel); *United States v. Cash*, 47 F.3d 1083, 1088 (11th Cir. 1995) (waiver of counsel). And, even

more on point for this case, we have also held that the validity of a waiver of the right to a jury trial is a mixed question of law and fact that we review *de novo. See Diaz*, 540 F.3d at 1321; *United States v. Farris*, 77 F.3d 391, 396 (11th Cir. 1996).

All of this precedent points in the same direction: toward *de novo* review of a district court's decision about whether a defendant's waiver of his right to a jury trial was knowingly and intelligently made. To be sure, that issue comes clothed in the unusual procedural context of the § 921(a)(33)(B)(i)(II)(bb) exception to the crime defined in § 922(g)(9). But the exception contained in item (bb) is defined in terms of the test for waiver of constitutional rights. Instead of saying "unless . . . the person knowingly and intelligently waived the right to have the case tried by a jury," as it did, Congress might as well have said: "unless . . . there was no constitutionally valid jury waiver."

If we view the (bb) exception as what it is in substance, the issue is a constitutional one, which is subject to *de novo* review. Even if we don't view it as a constitutional issue, it is still at least a legal issue, or a mixed issue of law and fact, or the application of law to fact. Different verbal formulations, same standard of review. For all of these reasons, we hold that a district court's decision about whether the § 921(a)(33)(B)(i)(II)(bb) exception applies in this § 922(g)(9) prosecution is subject to *de novo* review.

For what it's worth, our holding matches the holdings of the other four courts of appeals that have decided this issue in the context of § 921(a)(33)(B); all agree that *de novo* review is the proper

standard. *United States v. Akins*, 276 F.3d 1141, 1146 (9th Cir. 2002); *Hartsock*, 347 F.3d at 4; *United States v. Bethurum*, 343 F.3d 712, 716–17 (5th Cir. 2003); *United States v. Smith*, 171 F.3d 617, 619, 621–22 (8th Cir. 1999).

### 2. For the Burden of Production and Persuasion Issues

The other standard of review question we must answer is what type of review we must give to the district court's decision about which party bears the burdens of production and persuasion on the § 921(a)(33)(B) exception issue. And who bears those burdens depends on two different questions of law: (1) whether § 921(a)(33)(B) defines the elements of a misdemeanor crime of domestic violence or is instead an affirmative defense to that offense; and (2) whether, if § 921(a)(33)(B) is an affirmative defense, it negates an element of the domestic violence offense.

Both questions are resolved through examination of the statutory language. *See, e.g.*, *United States v. Johnson*, 981 F.3d 1171, 1183–87 (11th Cir. 2020) (evaluating § 921(a)(33)(B) to determine whether it defines elements or sets out affirmative defenses); *United States v. Kloess*, 251 F.3d 941, 947 (11th Cir. 2001) (evaluating 18 U.S.C. § 1515(c) to determine whether it is an affirmative defense that "tends to negate an element of the crime charged" and therefore has to be "disproved by the government") (emphasis omitted); *McArthur*, 108 F.3d at 1353 (noting that we "begin with the language and structure of the statute" when evaluating "whether an exception to a criminal offense is an element of the crime or an affirmative defense").

It is well settled that questions of statutory construction are legal determinations that we review *de novo. See, e.g., United States v. Svete*, 556 F.3d 1157, 1161 (11th Cir. 2009) (en banc) ("Questions of statutory construction are reviewed *de novo.*"); *United States v. Evans*, 478 F.3d 1332, 1341 (11th Cir. 2007); *United States v. Johnson*, 399 F.3d 1297, 1298 (11th Cir. 2005); *United States v. Trainor*, 376 F.3d 1325, 1330 (11th Cir. 2004).

### B. The Applicable Burdens of Production and Persuasion

In a close case, the burdens of production and persuasion can decide the case. *See, e.g., United States v. Iriele*, 977 F.3d 1155, 1177 (11th Cir. 2020) (noting that where the defendant bears the burden of persuasion, a "tie goes to the government"); *United States v. Rodriguez*, 398 F.3d 1291, 1300 (11th Cir. 2005) ("Where errors could have cut either way and uncertainty exists, the burden is the decisive factor . . . ."); *Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, 141 S. Ct. 1951, 1970 (2021) (Gorsuch, J., concurring in part and dissenting in part) ("The whole reason we allocate the burden of persuasion is to resolve close cases by providing a tie breaker where the burden *does* make a difference."). The district court found that both burdens were on Shamsid-Deen. We agree.

### 1. The Burden of Production

Whether the defendant or the government bears the burden of production depends on whether the § 921(a)(33)(B) exception defines an element of a "misdemeanor crime of domestic violence" or sets out an affirmative defense to that crime. If it defines an

element of the crime, the government must both plead and prove the existence of it. *See Johnson*, 981 F.3d at 1184 n.8 ("[I]f the Section 921(a)(33)(B) components were elements, the government would be required to prove them."); *In re Winship*, 397 U.S. 358, 364 (1970) (holding that the government must prove every element of a crime beyond a reasonable doubt). But if § 921(a)(33)(B) instead sets out an affirmative defense, "the defendant has the burden of going forward with sufficient evidence to raise the exception as an issue." *Laroche*, 723 F.2d at 1543; *United States v. Alvarez*, 755 F.2d 830, 842 n.12 (11th Cir. 1985).

Our *Johnson* decision, which came out after this case left the district court, is binding precedent that vindicates the district court's decision that § 921(a)(33)(B) contains affirmative defenses, which puts the burden of production on Shamsid-Deen. *See* 981 F.3d at 1182, 1184 n.8; *cf. Alvarez*, 755 F.2d at 842 n.12 ("[T]he absence of self-defense is not an element of the crime. Rather, self-defense is an affirmative defense on which the defendant bears the burden of production."). In *Johnson*, we explained that § 921(a)(33) "includes two subsections" and that "subsection (a)(33)(A) contains . . . elements" while "subsection (a)(33)(B) contains affirmative defenses." 981 F.3d at 1182. We would be bound under the prior panel precedent rule to follow that holding even if we believed it to be wrong, but we note that it aligns with our decisions characterizing other § 921(a) exceptions. *See, e.g.*, *United States v. Jackson*, 57 F.3d 1012, 1015–17 (11th Cir. 1995) (implicitly recognizing that § 921(a)(20) is an affirmative defense); *Laroche*, 723 F.2d at

1543 (explicitly recognizing that § 921(a)(3) and § 921(a)(16) are affirmative defenses).

So, Shamsid-Deen had the burden of production.

### 2. The Burden of Persuasion

Whether the district court is correct that Shamsid-Deen also had the burden of persuasion depends on whether the affirmative defense in § 921(a)(33)(B)(i)(II)(bb) negates an element of the "misdemeanor crime of domestic violence" offense. "Any defense which tends to negate an element of the crime charged, sufficiently raised by the defendant, must be disproved by the government." *Kloess*, 251 F.3d at 947 (emphasis omitted); *see also id.* at 948 ("[I]f the defendant introduces evidence that has the effect of negating any element of the offense, the government must disprove that defense beyond a reasonable doubt."). So to decide who has the burden of persuasion here, the precise question we need to answer is whether § 921(a)(33)(B) affirmative defenses negate, "contradict or tend to disprove any element of" § 922(g)(9), *see Dixon v. United States*, 548 U.S. 1, 11 (2006), which criminalizes possession of a firearm by a person who has been convicted of a misdemeanor crime of domestic violence, or § 921(a)(33)(A), which defines what constitutes a misdemeanor crime of domestic violence, *see Johnson*, 981 F.3d at 1182.

As he did in the district court, Shamsid-Deen contends that § 921(a)(33)(B) affirmative defenses are the kind that negate an element of the § 922(g)(9) offense, specifically the "status" element

(that is, his status as a person who has been convicted of a misdemeanor crime of domestic violence).  The government argues that § 921(a)(33)(B)(i)(II) does not negate an element of § 922(g)(9) because affirmative defenses that "negative guilt by cancelling out the existence of some required element of the crime" typically include "certain kinds of mistake of fact, mistake of law, intoxication, or insanity," which "are properly viewed as proof that the defendant did not have the mental state required for the crime charged." *See* 1 W.R. LaFave, *Substantive Criminal Law* § 1.8(c), at 107 (3d ed. 2018).

Only one federal appellate court has addressed this exact question, and it too relied on LaFave's black-letter law. *See Hartsock*, 347 F.3d at 8. On its way to concluding that a § 921(a)(33)(B)(i) defense did not negate, contradict, or tend to disprove an element of § 922(g)(9), the First Circuit explained:

> [T]he label "affirmative defense" applies to different categories of defenses. *See* 1 LaFave, *Substantive Criminal Law*, § 1.8(c) (1986). One such category is defenses that "negative guilt by cancelling out the existence of some required element of the crime." *Id.* Other categories of affirmative defenses, such as duress, do not negate an element of the crime, but instead provide a justification sufficient to overcome or mitigate criminal liability. *Id.* Yet a third type of affirmative defense is based on individual exceptions to substantive crimes. *Id.*; *see* [*United States v.*] *Bartelho*, 71 F.3d [436,] 440 [(1st Cir. 1995)] (finding that

> a statutory exception created an affirmative defense).
> Affirmative defenses in this third category are typified
> by "an exception or proviso setting forth the defense."
> LaFave, *supra*, § 1.8(c). It is in this third category of
> affirmative defenses that § 921(a)(33)(B)(i)(I) properly
> belongs.

*Hartsock*, 347 F.3d at 8.

As the LaFave treatise recognizes, affirmative defenses that negate elements of offenses are typically ones that negate a defendant's criminal state of mind. *See* 1 LaFave, *Substantive Criminal Law*, § 1.8(c); *Dixon*, 548 U.S. at 7 ("Like the defense of necessity, the defense of duress does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully; instead, it allows the defendant to avoid liability because coercive conditions or necessity negates a conclusion of guilt even though the necessary *mens rea* was present.") (cleaned up).  Those kinds of defenses are of a different category than defenses that appear as statutory exceptions or provisos. *See Hartsock*, 347 F.3d at 8; 1 LaFave, *Substantive Criminal Law*, § 1.8(c). Section 921(a)(33)(B) does not negate a domestic violence misdemeanant's criminal state of mind; it merely creates exceptions to the default rule that an offense meeting the elements in § 921(a)(33)(A) qualifies as a misdemeanor crime of domestic violence. *See* 18 U.S.C. § 921(a)(33)(B). And it does so in a separate subsection from the one that lists the elements of that crime. *See id.*

Section 921(a)(33)(B) "allows the defendant" who did not knowingly and intelligently waive his right to a jury trial "to avoid liability because" the absence of a valid waiver "negates a conclusion of guilt even though the necessary *mens rea*" for the misdemeanor crime of domestic violence "was present." *See Dixon*, 548 U.S. at 7 (quotation marks and alteration omitted). But it doesn't negate or tend to disprove that he committed that crime. It doesn't invalidate his conviction. It just allows him to avoid having that conviction used as a qualifying predicate for a § 922(g)(9) charge.

In that way, it's similar to how this Court treats "question[s] about the validity of the prior convictions used to enhance [a] sentence under 18 U.S.C. § 924(e)." *See Jackson*, 57 F.3d at 1016. In *Jackson*, we explained:

> Under § 924(e), the burden is properly placed on the defendant raising the challenge to show the constitutional invalidity of the prior convictions. Any given conviction might suffer any of a myriad of constitutional defects. *It would approach the absurd to require the government to undertake to prove guilt all over again in every predicate conviction.* Instead, the government's burden is properly met when it introduces evidence that there are at least three prior violent felony convictions. The defendant must then point out any defects in a particular prior conviction.

57 F.3d at 1016 (alterations adopted) (emphasis added) (quoting *United States v. Ruo*, 943 F.2d 1274, 1276 (11th Cir. 1991)). Of

course, *Jackson* dealt with a different § 921(a) exception and needed to decide only whether that exception was an affirmative defense that required the defendant to bear the burden of production, so our statement about the reasonableness — or rather, the absurdity — of requiring the government to bear the burden of persuasion is dicta. *See* 57 F.3d at 1017 (holding that the defendant bears the burden of production on a § 921(a)(20) defense).

But dicta can be persuasive, and it is here. *Jackson*'s reasoning about who bears the burden of production on a § 921(a)(20) defense applies just as strongly to determining who bears the burden of persuasion on a § 921(a)(33)(B) defense, including the (B)(i)(II)(bb) defense at issue in this case. We agree with the district court that the § 921(a)(33)(B) defenses do not negate an element of the § 922(g)(9) crime.

So Shamsid-Deen bears the burden of persuasion, as well as the burden of production, on the § 921(a)(33)(B)(i)(II)(bb) exception.[1]

---

[1] In our *Laroche* opinion we made this statement: "Where affirmative defenses are created through statutory exceptions, *the ultimate burden of persuasion remains with the prosecution*, but the defendant has the burden of going forward with sufficient evidence to raise the exception as an issue." 723 F.2d at 1543 (emphasis added). But as the district court correctly noted, that statement is dicta because we did not actually reach the burden of persuasion issue in deciding the *Laroche* case. We stopped our analysis at the burden of production stage. *See id.* ("We . . . hold that the antique weapons exception [in § 921(a)(3), (16)] is in essence an affirmative defense that must be raised by the defendant before the burden shifts to the government to disprove its

## C. The Inapplicability of the § 921(a)(33)(B)(i)(II)(bb) Exception

applicability. Here the defense introduced no evidence that the weapons came within the exception; accordingly the government was under no obligation to disprove its applicability."). Because the statement in *Laroche* was not necessary to the result in that case, it was dicta. *See, e.g.*, *Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1333 (11th Cir. 2016) ("[T]he statement is dicta because it was not necessary to the result in [the earlier case]."); *United States v. Santa*, 236 F.3d 662, 672 n.14 (11th Cir. 2000) ("As the court's statement in [the earlier case] was unnecessary to its decision, it is a dictum and does not control our decision in this case."); *United States v. Eggersdorf*, 126 F.3d 1318, 1322 n.4 (11th Cir. 1997) ("More important, the pertinent language in [the earlier case] is dicta — not necessary to deciding the case then before us.").

It's true that we repeated the *Laroche* dicta in our *Johnson* opinion. *Johnson*, 981 F.3d 1171, 1184 & n.9 (11th Cir. 2020). But the *Johnson* opinion's use of the *Laroche* dicta is itself dicta. That's because we did not decide the *Johnson* case on the burden of persuasion. Instead, as we had in *Laroche*, in *Johnson* we reached the result based on the burden of production. We explained: "Simply put, Johnson never properly raised an affirmative defense under Section 921(a)(33)(B)(ii) because he did not allege any of the conditions set forth by that section that would exempt him from having committed a 'misdemeanor crime of domestic violence,' so the government had no obligation to prove that that exception does not apply." *Johnson*, 981 F.3d at 1190 n.15.

The statement about the burden of persuasion we repeated from *Laroche* played no role in *Johnson* and was dicta in that case, as it had been in *Laroche*. It was, to be sure, twice told dicta, but as we have explained before, "twice told dicta is still dicta." *United States v. Maung*, 320 F.3d 1305, 1308 (11th Cir. 2003); *see also United States v. Hunter*, 172 F.3d 1307, 1310 n.1 (11th Cir. 1999) (Carnes, J., concurring) ("[T]hat earlier language is itself dicta insofar as the present issue is concerned . . . . Two layers of dicta cannot do what one does not — bind a later panel."). Nothing in *Laroche* or *Johnson* prevents us from holding, as we do: the defendant has the burden of persuasion on the § 921(a)(33)(B)(i)(II)(bb) defense.

With the burdens of production and persuasion allocated, we can now answer this appeal's ultimate question: whether Shamsid-Deen established that the § 921(a)(33)(B)(i)(II)(bb) exception applies to his 2014 Georgia domestic violence battery conviction and established that he did not "knowingly and intelligently waive[] the right to have the case tried by a jury."

The district court implicitly concluded that Shamsid-Deen carried his burden of production. Although it didn't explain its reasoning for that conclusion, we agree that by introducing the double-sided form (which explained his right to counsel and his plea options on separate sides of the same document) Shamsid-Deen met this "minimal burden." *See Kloess*, 251 F.3d at 948. The real dispute is about whether he carried his burden of persuasion on the issue of the lack of a knowing and intelligent jury waiver back in 2014. Shamsid-Deen and the district court believe he did carry that burden, the government believes he did not, and we believe the government has the stronger side of the argument.

The focus of both parties' arguments is the double-sided form that Shamsid-Deen read and signed before he received a bench trial and was convicted in the Georgia court. He signed the right-to-counsel side of the form acknowledging: "I understand an attorney has education and experience concerning . . . *how to select a jury if I desire a jury trial.*" Doc. 70-2 (emphasis added). That statement and acknowledgement would have been pointless if Shamsid-Deen could not have had a jury trial. Even more directly on point, he signed the plea side of the form acknowledging: "I am

fully aware that upon a not guilty plea, *I have the right to a trial, either before a jury or the Court . . . .*" Doc. 70-3 (emphasis added). Shamsid-Deen pleaded guilty before a state court judge who signed a certification finding that "any waiver of rights is done with a full understanding of those rights." *Id.*

On the other hand, the plea form did not contain any place for Shamsid-Deen to indicate that he wanted to plead not guilty and request a jury trial. Instead, the form's alternative to initialing the "Guilty Plea" option was a "Not Guilty Plea" option, which stated: "I plead NOT GUILTY to the charge(s) against me and request a non jury trial. I knowingly and voluntarily waive (give up) my right to a trial before a jury . . . who would hear the evidence and law and decide if I am guilty or not guilty. I want my case to be heard and decided by the Judge acting without a jury." *Id.*

So the right-to-counsel side of the form told Shamsid-Deen that an attorney, if he elected to have one (which he did), would know how to select a jury if Shamsid-Deen wanted a jury trial. And the fourth sentence from the top of the plea side of the form contained an acknowledgment that he was fully aware that if he pleaded not guilty he had the right to a trial before a jury. Yet the same plea form did not contain any space to initial that would have let Shamsid-Deen plead not guilty, as he did, without indicating that he was waiving his right to a jury trial. The forms alone are ambiguous.

But there is more evidence than just the forms. There is evidence in the record of the state court bench trial that supports a

conclusion that Shamsid-Deen's waiver of a jury trial was done knowingly and intelligently. Specifically, after hearing from the prosecutor that Shamsid-Deen "wishe[d] to plead not guilty . . . and proceed with his attorney . . . and have a non-jury trial," the judge who presided over the bench trial asked: "Mr. Shamsid-Deen, is that what you want to do?" If for any reason proceeding without a jury was not what Shamsid-Deen wanted to do, all he had to do was say no. Instead he answered: "Yes, sir."[2]

The reason Shamsid-Deen wanted to waive a jury is apparent from the statements his lawyer made to the state court judge just before sentencing. After Shamsid-Deen was convicted in the state court bench trial, his lawyer argued for a lenient sentence in part by explaining to the judge that they (his lawyer had said "we") deliberately chose a bench trial so that they wouldn't "waste jurors' time." They made that choice to try to avoid Shamsid-Deen getting a harsher sentence — one that included incarceration — if he were found guilty. The experienced counsel referred to that as avoiding a "trial tax." And the strategy worked: the trial tax was avoided. Although Shamsid-Deen was sentenced to 12 months jail time, the state court judge, who had not had to spend the extra time and go to the additional trouble of presiding over a jury trial,

_____

[2] The district court viewed Shamsid-Deen's response as "simply confirm[ing] the executed form," but the bench trial judge didn't frame his question to Shamsid-Deen by reference to the form. The judge didn't ask Shamsid-Deen what the form he had signed said but instead whether he wanted to proceed with a bench trial.

allowed him to serve all of his sentence on probation, as Shamsid-Deen's lawyer had requested.

The district court viewed the jury waiver strategy as the strategic choice of the lawyer alone. But waiving a jury trial is a decision that must be made by the defendant personally; it is not a tactical decision that his lawyer can make for him. *See, e.g., Winters v. Cook*, 489 F.2d 174, 179 (5th Cir. 1973) (noting that among the "inherently personal fundamental right[s] that . . . can be waived only by the defendant and not by his attorney" is the "the right to waive trial by jury"); *United States v. Spiegel*, 604 F.2d 961, 965 n.9 (5th Cir. 1979) (noting that a lawyer's ability to waive the right to a twelve-person jury "in no way suggests that counsel may waive the right to a Jury trial for their clients"); *United States v. Stewart*, 700 F.2d 702, 704 (11th Cir. 1983). We assume, absent evidence to the contrary, that lawyers fulfill their professional responsibilities and do not usurp decisions that belong to their clients. *Cf. Chandler v. United States*, 218 F.3d 1305, 1324 (11th Cir. 2000) (en banc) ("[G]iven the absence of evidence in the record, we must assume counsel carried out his professional responsibility and discussed mitigation with his client."). For that reason, we conclude that Shamsid-Deen's lawyer's statement in court that they deliberately chose a bench trial reflected a decision Shamsid-Deen made, or at least consented to, after advice from his lawyer about the possible risks of a jury trial.

Our conclusion is bolstered by evidence in the record about the state court's general procedures, which rely on lawyers to

advise the clients they represent about choosing a bench or jury trial. Under those state court procedures, the default is that a criminal case is set for a jury trial unless the defendant decides to plead guilty or to have a bench trial. That, too, is evidence that Shamsid-Deen knowingly and intelligently decided to waive a jury trial.

We disagree with the district court's statement that there was "no evidence" that Shamsid-Deen understood he had the right to a jury trial or that he knowingly and intelligently waived that right. There is at least some evidence going both ways, and, if anything, the evidence showing a knowing and intelligent wavier is stronger than that indicating the absence of one.

When the evidence is unclear or evenly balanced, or the inferences that can be drawn from it are ambiguous, the party with the burden of persuasion loses. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (explaining that the term "burden of persuasion" means that the party with the burden "loses if the evidence is closely balanced"); *Iriele*, 977 F.3d at 1177 (noting that a "tie goes to the" party who does not bear the burden of persuasion); *Beeman v. United States*, 871 F.3d 1215, 1225 (11th Cir. 2017) (noting that if the fact finder "is left uncertain, the party with the burden loses") (quotation marks omitted); *Rodriguez*, 398 F.3d at 1300; *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) ("Where, as here, the evidence does not clearly explain what happened, . . . the party with the burden loses."). The burden of persuasion matters, and, as we have explained, the party burdened with the burden is Shamsid-Deen.

### III. Conclusion

We reverse the district court's order granting Shamsid-Deen's motion to suppress evidence of his 2014 conviction for misdemeanor battery under the Georgia Family Violence Act, and we remand the case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

20-11877                PRYOR, J., Concurring                1

JILL PRYOR, Circuit Judge, Concurring in the judgment:

I concur in the result only.